EDGAR S. APPLEBY et al., Individually and as Executors of CHARLES E. APPLEBY, Deceased, Appellants and Respondents, *v.* THE CITY OF NEW YORK et al., Respondents and Appellants.

Navigable waters — land under water of Hudson river — New York city — grant by state to city of New York and by city to plaintiff's predecessors in title of lands under water of Hudson river for purpose of extension of streets, erection of wharves and piers — grant subject to right of public to navigate waters — establishment of bulkhead line by secretary of war subordinates land beyond line to requirements of navigation — execution of plan for improvement of water front for purpose of navigation outside such line invades no right of plaintiffs — lands inside such line which remain under water subject to regulation of use for purposes of navigation — titles may not be divested by such regulations without compensation — city may dredge out lands under water to promote navigation — plan of harbor improvement may not be carried out without re-acquiring title conveyed to private owners.

1. The so-called *jus privatum*, or absolute ownership of lands under navigable waters which attached to the English crown, resides in the people in their sovereign capacity and cannot be conveyed for

private purposes. The state has succeeded to the *jus publicum* of the English crown and not to the *jus privatum* which in any event is at all times subject to the *jus publicum*.

2. The state holds the title in fee to lands under water of the Hudson river as sovereign for the public, subject to the right of the people to use the river as a water highway. A grant, therefore, of such lands under water to the city of New York for the purpose of enabling the city to regulate and construct slips, wharves and piers and a sale by the city of a portion of such lands to plaintiff's predecessors in title for the purpose of filling and using the land for the extension of streets thereon and the erection of wharves, piers, etc., were not absolute and unqualified but were subject to the rights of the public.

3. The establishment by the secretary of war of a bulkhead line subordinated the title of the state, the city and its grantees beyond such line to such use of the submerged lands as should be required for the public right of navigation, nor have they authority to fill in any portion of their lands west of the bulkhead line and the city of New York in the execution of its plans for the improvement of the water front westerly of such line for the purpose of navigation invaded no right of plaintiffs.

4. If plaintiff's lands easterly of the bulkhead line had been actually filled in they would no longer be lands under water and would be free from the regulatory power of the state, but so long as they remain under water they are subject to the sovereign power of the state to regulate their use for purposes of navigation. The state has delegated such powers to the city, but it may not, as the successor to the title of the state, convey lands under waters to private owners and retake the same by the exercise of the police power without making compensation therefor. Such grant having once been made, titles traced back to the state as proprietor may not be divested by regulations in aid of navigation, without compensation.

5. The city had the right to dredge out all the lands under water between the piers to promote navigation. The establishment of the bulkhead line does not conflict with the right of the city in the execution of an authorized plan of harbor improvement to construct slips between the piers, but the plan may not be carried out without re-acquiring the title which it has conveyed to private owners.

*Appleby* v. *City of New York*, 199 App. Div. 539, affirmed.

(Argued January 10, 1923; decided April 17, 1923.)

CROSS-APPEALS from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 22, 1922, modifying and affirming

1923.]                    Points of counsel.          [235 N. Y. 351]

as modified a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

*Spotswood D. Bowers* and *Banton Moore* for plaintiffs, appellants and respondents. Title to the land under water in navigable waters of the United States is in the state where the land is situated, which has plenary authority over same subject only to such action as congress may take in execution of its power under the Constitution to regulate commerce among the several states. (*People v. Int. Bridge Co.*, 223 N. Y. 137; 254 U. S. 126; *People v. Hudson River Connecting R. R. Corp.*, 228 N. Y. 203; 254 U. S. 631; *People v. Steeplechase Park Co.*, 218 N. Y. 471; *Seattle v. Oregon & W. R. R. Co.*, 255 U. S. 56, 63; *Langdon v. Mayor, etc.*, 93 N. Y. 129; *Montgomery v. Portland*, 190 U. S. 89; *St. Anthony Falls Water Power Co. v. St. Paul Comms.*, 168 U. S. 349; *L. S. & M. S. Ry. Co. v. Ohio*, 165 U. S. 365; *Escanada v. Chicago*, 107 U. S. 678, 683; *Matter of Public Service Com.*, 224 N. Y. 211.) The legislation authorizing the establishment of harbor lines by the secretary of war did not in any way change or affect the title to the land under water or destroy the vested rights of individuals therein as same had been created or existed under state law. The effect of such legislation was merely that thereafter the consent of the state whether previously or subsequently given to fill in land under water or erect piers or wharves in navigable waters would not be sufficient to authorize such filling in or such erection of piers or wharves without also obtaining the consent of the secretary of war thereto. (*People v. Hudson River Connecting R. R. Corp.*, 228 N. Y. 220; 254 U. S. 631; *Gring v. Ivis*, 222 U. S. 365; *Montgomery v. Portland*, 190 U. S. 89; *L. S. & M. S. Ry. Co. v. Ohio*, 165 U. S. 365.) The state of New York had power to grant the absolute title to the land under water in question and thus convey the *jus privatum*

23

and extinguish the *jus publicum.* (*People* v. *Steeplechase
Park Co.,* 218 N. Y. 471; *Thousand Island S. Co.* v.
*Visger,* 179 N. Y. 206; *Matter of Long Sault Development
Co.,* 212 N. Y. 1; *Langdon* v. *Mayor, etc.,* 93 N. Y. 129;
*People* v. *D. & H. Co.,* 213 N. Y. 199; *Mayor, etc.,* v.
*Law,* 125 N. Y. 380; *Towle* v. *Remsen,* 70 N. Y. 303;
*Knickerbocker Ice Co.* v. *Schultz,* 116 N. Y. 382; *Matter
of McClellan,* 146 App. Div. 598.) The state conveyed
the fee to the *locus in quo* to the city of New York and
not only authorized the city to convey the lands under
water to adjacent upland owners, but gave such owners a
pre-emptive right in all conveyances thereof made by the
city. (*Mayor, etc.,* v. *Hart,* 95 N. Y. 443; *Knickerbocker
Ice Co.* v. *F. S. St. Ry. Co.,* 176 N. Y. 408; *People* v.
*Steeplechase Park Co.,* 218 N. Y. 467; *People* v. *Del. &
Hud. Co.,* 213 N. Y. 194.) The conveyances by the city
to plaintiffs' predecessors in title between the streets
were in fee simple absolute and they and their respective
successors in title had a right to fill in the property
at his or their pleasure without permission from the
city. (*Langdon* v. *Mayor, etc.,* 93 N. Y. 129; *Duryea* v.
*Mayor, etc.,* 62 N. Y. 610; *Mayor, etc.,* v. *Law,* 125 N. Y.
380; *Muhlker* v. *N. Y. & H. R. R. Co.,* 197 U. S. 544;
*Williams* v. *Mayor, etc.,* 105 N. Y. 419; *Kingsland* v.
*Mayor, etc.,* 110 N. Y. 569; *Bedlow* v. *Floating Dock Co.,*
112 N. Y. 265; *Sage* v. *Mayor, etc.,* 154 N. Y. 61; *Lansing*
v. *Smith,* 4 Wend. 9; *Furman* v. *Mayor, etc.,* 5 Sandf. 16;
*People* v. *N. Y. & S. I. Ferry Co.,* 68 N. Y. 71; *Towle* v.
*Remsen,* 70 N. Y. 303; *Mayor* v. *Hart,* 95 N. Y. 443;
*Whitney* v. *Mayor, etc.,* 6 Abb. [N. C.] 329.) The
*jus publicum* in the lands under water granted to plaintiffs'
predecessors in title was extinguished by reasonable
grants and thereafter the waters over said lands ceased
to be navigable waters. (*Langdon* v. *Mayor, etc.,* 93
N. Y. 129; *Matter of Long Sault Development Co.,*
212 N. Y. 8; *People* v. *Delaware & Hudson Co.,* 213
N. Y. 194; *Wetmore* v. *Brooklyn Gas Co.,* 42 N. Y. 384;

*Matter of Mayor, etc.,* 135 N. Y. 253; *People* v. *Lambier,* 5 Den. 1.) Even if the city has a right to maintain the " approaches " as pier streets in West Thirty-ninth, West Fortieth and West Forty-first streets, the city has no right of lateral access to said piers over the lands under water conveyed to plaintiffs' predecessors in title. (*Matter of Mayor, etc.,* 193 N. Y. 518; *American Ice Co.* v. *City of New York,* 193 N. Y. 673; *Walsh* v. *N. Y. Floating Dock Co.,* 77 N. Y. 455; *City of Brooklyn* v. *N. Y. Ferry Co.,* 87 N. Y. 204; *Jenks* v. *Miller,* 14 App. Div. 478; *Knickerbocker Ice Co.* v. *Shultz,* 116 N. Y. 382; *People* v. *Mould,* 55 N. Y. Supp. 453.)

*John A. Garver* and *Carl A. Mead* for Consolidated Gas Company of New York, intervenor. The land under water between the bulkhead line and Thirteenth avenue was granted in fee simple absolute and for beneficial enjoyment. (*Langdon* v. *Mayor, etc.,* 93 N. Y. 129; *Williams* v. *Mayor, etc.,* 105 N. Y. 419; *Saunders* v. *New York Central, etc., R. R. Co.,* 144 N. Y. 75; *Matter of Long Sault Development Company,* 212 N. Y. 1; *People* v. *Steeplechase Park Company,* 218 N. Y. 459; *People* v. *Delaware & Hudson Co.,* 213 N. Y. 194; *First Construction Company* v. *State of New York,* 221 N. Y. 295; *Towle* v. *Remsen,* 70 N. Y. 303; *Duryea* v. *Mayor, etc.,* 62 N. Y. 592; *Duryee* v. *Mayor, etc.,* 96 N. Y. 477.) Even if it were correct, as here stated, that the city has an exclusive right to erect piers on this land under water not belonging to it, a contention which will be considered later, that exclusive right would not preclude the owner of the land under water from recovering its full value in condemnation proceedings instituted by the city to acquire the land, for the purpose of erecting its piers thereon. (Randolph on Em. Dom. 229, 230, § 247; 2 Lewis Em. Dom. [2d ed.] 1052, 1056, § 479; *Matter of N. Y., L. & W. Ry. Co.,* 27 Hun, 116; *Matter of Staten Island Railroad Co.,* 10 N. Y. St. Repr. 393; *Matter of New York,*

*Westchester & Boston R. R. Co.*, 151 App. Div. 50; *Currie v. Waverly, etc., R. R. Co.*, 52 N. J. Law, 381; *Trimmer v. Railroad Company*, 55 N. J. Law, 46; *Johnson* v. *Freeport, etc., Ry. Co.*, 111 Ill. 413; *Cohen* v. *St. Louis, etc., R. R. Co.*, 34 Kans. 158; *Trustees of College Point v. Dennett*, 2 Hun, 669; 5 T. & C. 217; *Matter of Gilroy*, 85 Hun, 424; *Conan* v. *City of Ely*, 91 Minn. 127.) The city has no right of lateral access to its piers over adjacent land under water belonging to private owners. (*Story v. N. Y. El. R. R. Co.*, 90 N. Y. 122; *Kane* v. *N. Y. El. R. R. Co.*, 125 N. Y. 164; *Knickerbocker Ice Co.* v. *F. S. St. Ry. Co.*, 176 N. Y. 408; *City of Brooklyn* v. *New York Ferry Co.*, 87 N. Y. 204; *Knickerbocker Ice Co.* v. *Schultz*, 116 N. Y. 382; *Matter of Mayor* [*American Ice Co.*], 193 N. Y. 503, 519; *American Ice Co.* v. *City*, 193 N. Y. 673, 674; *Jenks* v. *Miller*, 14 App. Div. 474; *People v. Mould*, 37 App. Div. 35; *Dooley* v. *Proctor, etc., Mfg. Co.*, 77 Misc. Rep. 398; *Keyport Steamboat Co.* v. *Farmers Transportation Co.*, 18 N. J. Eq. 511.) The adoption of new city plans for the waterfront does not affect or impair the rights of private owners of property located within the area covered by the plans. (3 Dillon on Mun. Corp. [5th ed.] § 1029; *Matter of Widening Wall Street*, 17 Barb. 617; *Forster* v. *Scott*, 136 N. Y. 577; *Matter of City of New York*, 196 N. Y. 255; *Matter of City of New York* [*Avenue D*], 200 N. Y. 536; *People ex rel. N. Y. C., etc., Ry. Co.* v. *Priest*, 206 N. Y. 274; *Matter of Rogers Avenue*, 29 Abb. [N. C.] 361; *Matter of Mayor, etc.*, 24 App. Div. 7; *German Am. R. E. Co.* v. *Meyers*, 32 App. Div. 41; *Singer* v. *Mayor*, 47 App. Div. 42; *Matter of City of New York* [*Pier 15*], 95 App. Div. 501; *People ex rel. Bennett* v. *Dickey*, 148 App. Div. 663.)

*George P. Nicholson*, Corporation Counsel (*Charles J. Nehrbas* of counsel), for City of New York, respondent and appellant. The title of the city of New York to

the lands under water around Manhattan Island is not absolute or unqualified.   The city holds the lands subject to regulation and control by both the state of New York and the congress of the United States.   It could, therefore, confer no greater title upon plaintiffs' predecessors. (*People* v. *N. Y. & S. I. Ferry Co.*, 68 N. Y. 71; *Sage* v. *Mayor, etc., of New York*, 154 N. Y. 61; *Matter of City of New York*, 168 N. Y. 134; *Knickerbocker Ice Co.* v. *F. S. St. Ry. Co.*, 176 N. Y. 408; *American Ice Co.* v. *City of New York*, 217 N. Y. 402; *Coxe* v. *State*, 144 N. Y. 405; *Greenleaf-Johnson Lumber Co.* v. *Garrison*, 237 U. S. 251; *United States* v. *Chandler, Dunbar Co.*, 229 U. S. 53; *Lewis Blue Point Oyster Co.* v. *Briggs*, 229 U. S. 82.)   The secretary of war, by establishing a bulkhead line 150 feet west of Twelfth avenue, made it unlawful for the plaintiffs to fill any portion of their lands west of such line.   (*Scranton* v. *Wheeler*, 179 U. S. 141, 163; *Cummings* v. *Chicago*, 188 U. S. 410; *Calumet Grain Co.* v. *Chicago*, 188 U. S. 431; *Greenleaf-Johnson Co.* v. *Garrison*, 237 U. S. 251.)   The state authorities, by establishing a plan involving the construction of piers at the foot of Thirty-ninth, Fortieth and Forty-first streets, have made it unlawful for plaintiffs to build piers over their lands, and have devoted such lands, outshore of the bulkhead line, to the uses of slips or basins.   (*Montgomery* v. *Portland*, 190 U. S. 89; *People* v. *N. Y. & S. I. Ferry Co.*, 68 N. Y. 71; *Greenleaf-Johnson Lumber Co.* v. *Garrison*, 237 U. S. 251; *Coffin* v. *Scott*, 19 Wkly. Dig. 413; 102 N. Y. 730; *Matter of P. S. Comm.*, 224 N. Y. 211; *New York Dock Co.* v. *Flynn-O'Rourke Co.*, 198 App. Div. 376; *Union Ferry Co.* v. *Fairchild*, 191 App. Div. 639.) · The piers and sheds at the foot of Thirty-ninth, Fortieth and Forty-first streets are lawfully maintained.   (*People* v. *Vanderbilt*, 26 N. Y. 287; 28 N. Y. 396; *Mayor, etc.*, v. *Law*, 6 N. Y. Supp. 628; 125 N. Y. 380; *Burns Bros.* v. *City of N. Y.*, 178 App. Div. 615; 232 N. Y. 523; *Barney* v. *City of New*

*York, No. 2,* 83 App. Div. 237; *Penrhyn Slate Co.* v. *Granville El. L. & P. Co.,* 181 N. Y. 80; *New York City* v. *Pine,* 185 U. S. 93; *Matter of City of N. Y.,* 135 N. Y. 253.) The Appellate Division erroneously limited the city's right to dredge the slips to the area west of the bulkhead line established by the secretary of war. (*Lewis B. P. Co.* v. *Briggs,* 198 N. Y. 287; 229 U. S. 82; *Tempel* v. *United States,* 248 U. S. 121.)

*Frederic T. Stetson* for Weehawken Stock Yard Company, respondent and appellant.

POUND, J. This is an action to restrain the city of New York and other defendants from interfering in any way with the use and enjoyment of plaintiffs' lands under the water of the Hudson river between Thirty-ninth and Fortieth streets and between Fortieth and Forty-second streets, outshore of Twelfth avenue in the borough of Manhattan.

Title to the premises was vested in the city of New York by grants under the Colonial Charter of Governor Dongan in 1686. By chapter 115, Laws of 1807, the commissioners of the land office were directed to issue letters patent to the city granting to it all the right and title of the state to the lands under water at the locality, extending from low-water mark, four hundred feet into the river. By chapter 182, Laws of 1837, Thirteenth avenue as laid out on the George B. Smith map, so called, was declared to be the permanent exterior street or avenue in the city along the easterly shore of the Hudson river between the southerly line of Hammond street and the northerly line of One Hundred and Thirty-fifth street. The city of New York was vested with all the right and title of the people of the state to the lands under water extending from the westerly line of the lands granted by the act of 1826 to the westerly line of Thirteenth avenue, so laid out. The street lines were laid out over

the lands under water thus conveyed. Chapter 225, Laws of 1845, authorized the adoption of the ordinance known as the sinking fund ordinance which empowered the city to make the grants hereinafter mentioned.

On or about December 24, 1852, the city issued to one Laton a grant of a portion of the lands in suit, describing the same as a "water lot or vacant ground and soil under water to be made land and gained out of the Hudson." Another like grant was issued to the predecessor of plaintiffs on or about August 1, 1853, of the remaining portion of the lands. Plaintiffs claim title under these grants. The westerly line is the westerly line of Thirteenth avenue. The easterly line is the line of original high-water mark, which runs between Eleventh and Twelfth avenues. The grants were made for a substantial consideration. The streets were reserved to the city out of the granted premises and the grantees agreed to build streets and wharves when directed by the city. No such direction has been given.

By chapter 121, Laws of 1855, a commission was appointed to prepare plans for the improvement of New York harbor. By chapter 763, Laws of 1857, bulkhead and pier lines were established for the port of New York. A bulkhead line or line beyond which solid filling should not extend was established about 100 feet west of the westerly line of Twelfth avenue. This line was some distance east of Thirteenth avenue as laid out on the map. Under chapter 574, Laws of 1871, a further plan for the improvement of the water front moved the bulkhead line fifty feet farther out into the river and laid out piers eighty feet in width at the foot of Thirty-ninth, Fortieth and Forty-first streets.

In 1890 the latter line was established as a bulkhead line by the secretary of war under authority vested in him by Congress. Piers have been laid out under an authorized plan and built by the city within the street lines of Thirty-ninth, Fortieth and Forty-first streets,

which extend into the river beyond the bulkhead line. Permits and leases to occupy and use the piers have been granted by the city to the other defendants herein who float vessels in the slips over the plaintiffs' lands. The city of New York claims the right to dredge such lands for the purposes of harbor improvement. They rest such right on the contention that the lands under water are navigable and cannot lawfully be obstructed by plaintiffs. The plaintiffs contend that the land under water between the bulkhead line and their westerly line was granted in fee simple absolute and for beneficial enjoyment; that no public right of navigation remained over the lands thus conveyed.

The question is to what extent has the state by its grants extinguished the *jus publicum* over such lands.

At Special Term the city of New York was enjoined from dredging the lands of plaintiffs. The Appellate Division modified this judgment by permitting the city to dredge the lands *west of the bulkhead line* established by the secretary of war.

The city appeals because it claims the right to dredge any portion of plaintiffs' lands between the piers. The plaintiffs appeal on the ground that they are entitled to the relief demanded in the complaint.

The state holds the title in fee to lands under water as sovereign for the public, subject to the right of the people to use the river as a water highway. The grant of the lands to the city in 1807 was for the purpose of enabling the city to regulate and construct slips, wharves and piers. The city sold the lands for the purpose of enabling the grantees to fill and use the land for the extension of streets thereon and the erection of wharves, piers, etc.

The grant was, therefore, not absolute and unqualified, but was subject to the rights of the public. (*American Ice Co.* v. *City of New York*, 217 N. Y. 402, 405, 406.) The city could not exclude the public from the use of

navigable waters and it could not grant the right to exclude the public from such use so long as the waters remained navigable. It scarcely needs assertion that it could not destroy the navigability of the Hudson by making exclusive private grants. It could convey submerged lands along the shore to promote commerce, not to destroy it.

When the secretary of war established the bulkhead line, the title of the state, the city and its grantees beyond such line was subordinated to such use of the submerged lands as should be required for the public right of navigation. No private property right requiring compensation was taken or destroyed by the establishment of such line. The owner's title was subject to the use which the United States might make of it. (*Lewis Blue Point Oyster Co.* v. *Briggs*, 229 U. S. 82.) Plaintiffs have no authority to fill in any portion of their lands west of the bulkhead line. The city of New York in the execution of its plans for the improvement of the water front westerly of such line for the purpose of navigation invaded no right of plaintiffs.

But the United States acts as sovereign and the state of New York acts also as proprietor. The authority of the state in its governmental capacity over the waters of the Hudson within its limits is plenary, subject only to such action as Congress may take. (*Montgomery* v. *Portland*, 190 U. S. 89; *Matter of Public Service Commission*, 224 N. Y. 211.) It might have improved the water front itself. It had, however, granted all its title to the premises to the city of New York. The city might, in turn, have improved the water front, but it conveyed all its title to the plaintiffs in order to develop the commerce of the port by the construction of wharves, piers and slips.

If plaintiffs' lands easterly of the bulkhead line had been actually filled in they would no longer be lands under water and would be free from the regulatory

power of the state (*First Construction Co.* v. *State*, 221 N. Y. 295), but so long as they remained under water they were subject to the sovereign power of the state to regulate their use for purposes of navigation. The state has delegated such power to the city. The city may not, however, as the successor to the title of the state, convey lands under waters to private owners and retake the same by the exercise of the police power without making compensation therefor. (*Penn. Coal Co.* v. *Mahon*, 260 U. S. 393; 43 Sup. Ct. Rep. 158.) A distinction is taken between the mere ownership of the soil under water and the control over it for public purposes. (*People* v. *N. Y. & S. I. Ferry Co.*, 68 N. Y. 71.)

Great cities have been built up by grants of land under water. The city of New York has been similarly developed by extending it over submerged lands. The promotion of the commercial prosperity of the port has been one purpose of such grants. But no case holds that any substantial interference with navigation may thus be authorized. Much that has been said in the cases as to the absolute and uncontrolled power of the state to grant the navigable waters for private purposes as it may grant the dry land it owns is *dictum* (*People* v. *Steeplechase Park Co.*, 218 N. Y. 459; *Langdon* v. *Mayor*, 93 N. Y. 129), and in conflict with rules laid down in other well-considered cases which hold that the so-called *jus privatum*, or absolute ownership of lands under navigable waters, together with the exclusive privilege in the waters themselves, which attached to the English crown, resides in the people in their sovereign capacity and cannot be conveyed for private purposes. (*Town of Brookhaven* v. *Smith*, 188 N. Y. 74; *Barnes* v. *Midland R. R. Terminal Co.*, 193 N. Y. 378.) The lands in question remain under the public waters of the state and so long as they remain such, the right to control navigation over them remains in the state to be exercised in the public interest. (*Matter of Long Sault Development Co.*,

212 N. Y. 1; *Illinois Central R. R. Co.* v. *Illinois,* 146 U. S. 387, 453.) The state has succeeded to the *jus publicum* of the English crown and not to the *jus privatum* (*Town of Brookhaven* v. *Smith, supra;* Gould on Waters, § 17), notwithstanding much unnecessary discussion of the latter doctrine. The *jus privatum* in any event is at all times subject to the *jus publicum.* (*Tiffany* v. *Town of Oyster Bay,* 234 N. Y. 15.) The right of the grantee to fill in his land under water with solid filling (*Duryea* v. *Mayor,* 62 N. Y. 592, 597; 96 N. Y. 477, 496) is a delegated exercise of the public right in aid of commerce and subject to the prior exercise of the public right to regulate navigation directly. The grant for beneficial enjoyment is a grant in aid of commerce. But such grant having once been made, titles traced back to the state as proprietor may not be divested by such regulations, without compensation.

The grant to plaintiffs being a property right which can be resumed by the city only on payment of compensation, was a grant of all the title the city had to convey. The right of the public was not thereby extinguished. The city had the right to dredge out all the lands under water between the piers to promote navigation. The establishment of the bulkhead line does not conflict with the right of the city in the execution of an authorized plan of harbor improvement to construct slips between the piers, but the plan of the sovereign may not be carried out without re-acquiring the title which it has authorized the city to convey to private owners.

The judgment should be affirmed, without costs.

HISCOCK, Ch. J., HOGAN, CARDOZO, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment affirmed, etc.