In the Matter of Acquiring Title by the CITY OF NEW YORK, Respondent, to Lands on the Northerly Side of West 205th Street in the Borough of Manhattan.

NORTHERN TERMINAL CORPORATION OF NEW YORK, Appellant.

**Eminent domain — riparian rights — proceeding to condemn land bordering on Harlem river — agreement between claimant's predecessor in title and city fixing artificial high-water mark — deeds exchanging property on one side of such line for property on the other — effect of such agreement and deeds — riparian rights not destroyed thereby — erroneous refusal to make compensation therefor — evidence of sales of neighboring lands with riparian rights admissible but not error to exclude it.**

1. A riparian owner is one who owns to the *ripa* or bank of a river; one who owns to high-water mark. Riparian rights are incident to such ownership, passing with the transfer of the land, although not designated as such in the conveyance, title to which may not be taken without compensation. In general terms they connote the right and profit to the owner of the upland arising from its connection with the water, such as the easement of passage and use, subject, however, to governmental regulation for the improvement of navigation. They are not dependent upon ownership of the shore and are the same whether or not the riparian owner owns the soil under water.

2. Where the owner of uplands extending to the natural high-water line of the Harlem river and the city of New York, which owned the lands below said line, entered into an agreement pursuant to section 818-a of the charter of the city of New York (L. 1901, ch. 466,

amd. L. 1911, ch. 694) fixing the lines of high water in front of said uplands as a straight line or lines and, pursuant to section 205 of said charter, the city conveyed to the upland owner the lands under water inside of the new line and purchased from him the uplands outside of such line, appurtenant to what the upland owner conveyed to the city were all rights of riparian ownership incident to such lands and appurtenant to what the city conveyed to the upland owner were all rights of ownership incident to such lands. He also retained all his other riparian rights and they passed to his successor in title.

3. The effect of substituting an artificial boundary line between the upland owner and the city is to make his access to the water of less value than it would be if the land inside the artificial line was actually rather than theoretically contiguous to the water, but still it is of value and may not be taken by the city without compensation. It was error, therefore, in a proceeding to acquire the lands in question for public purposes, to hold that the property should be valued as an interior parcel having no connection with the water and not as a water front parcel with riparian rights.

4. Evidence of sales of neighboring lands with riparian rights, after title to claimant's land had vested in the city, might have been received, but no legal error was committed in excluding it.

*Matter of City of New York (West 205th St.),* 211 App. Div. 33, reversed.

(Argued February 25, 1925; decided March 3, 1925.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 28, 1924, which affirmed a final order of Special Term overruling objections and confirming awards in condemnation proceedings.

*Charles J. Nehrbas* and *Malcolm R. Lawrence* for appellant. The trial court valued the property taken upon the erroneous theory that there were no riparian rights appurtenant to it. (*Murdock* v. *Gilchrist,* 52 N. Y. 242; *Schoonmaker* v. *Hoyt,* 148 N. Y. 425; *Lambert* v. *Krum,* 121 Misc. Rep. 170; *Tiffany* v. *Town of Oyster Bay,* 234 N. Y. 15.) The property owned in fee by the claimant extends to the high-water line established by the agreement. Between that line and the Federal pier and bulkhead line is an area of land under water to which the city has the technical legal title. In the

exercise of the claimant's riparian rights, it may fill in the area in question out to the Federal line, or may erect platforms and bulkheads, or other structures designed to facilitate the handling of goods in transit. The claimant's right to utilize this area is of considerably greater value than the fee title of the city of New York. (*Hinkley* v. *State*, 234 N. Y. 309; *Appleby* v. *City of New York*, 235 N. Y. 351; *Matter of Appleby* v. *Delaney*, 235 N. Y. 364; *People* v. *H. R. C. R. R. Co.*, 228 N. Y. 203; *Matter of City of New York*, 168 N. Y. 134; *Matter of Appleby* v. *Hulbert*, 199 App. Div. 552.) The court erred in refusing to receive evidence of an important sale. (*L. A. Com. Co.* v. *Wells & Co.*, 186 App. Div. 500.)

*George P. Nicholson, Corporation Counsel* (*John F. O'Brien* and *Josiah A. Stover* of counsel), for respondent. Prior to July 27, 1916, and March 10, 1917, the riparian rights appurtenant to Butterley's upland were, in theory, extremely limited and, in practical effect, possessed little more than nominal value. These theoretical rights could not be utilized, in practical form, except by permission of the municipal authorities and by the expenditure of large sums of money. (*Sage* v. *Mayor, etc.*, 154 N. Y. 61; *Matter of City of New York*, 168 N. Y. 134; *Mayor* v. *Hart*, 95 N. Y. 443; *Kingsland* v. *Mayor, etc.*, 110 N. Y. 569; *Hedges* v. *W. S. R. R. Co.*, 150 N. Y. 150; *Nevins* v. *Friedhauer*, 198 App. Div. 250; Gerard on Titles to Real Estate [4th ed.], 853.) Assuming, without conceding, that technical error may have been committed in excluding evidence of sales subsequent to the vesting of title, such assumed error was harmless and did not affect the result. (*Hindley* v. *Man. El. Ry. Co.*, 185 N. Y. 335; *Title G. & T. Co.* v. *Pam*, 232 N. Y. 441; *Peverly* v. *U. T. Co.*, 202 App. Div. 863; *Koffler* v. *W. U. Tel. Co.*, 203 App. Div. 871; *Fullmer* v. *Elmira W., L. & R. R. Co.*, 204 App. Div. 849; *Hanrahan* v. *N. Y. Edison Co.*, 238 N. Y. 194.)

POUND, J. This is a proceeding by the city of New York to acquire title to property along the Harlem river between Two Hundred and Fifth and Two Hundred and Sixth streets in the borough of Manhattan, for the uses of the department of street cleaning for the purposes of a housing station. The property in question is described and shown by the damage map as extending " easterly along the southerly side of 206th Street one hundred and fifty (150) feet, *to the high water line of the Harlem River,* as fixed, determined upon and established and duly approved by the Commissioners of the Sinking Fund of the City of New York by resolution adopted October 19, 1916; thence southerly *along said high water line* to the northerly line of West 205th Street." Notwithstanding this description of the premises as a water lot, it has been held that the property should be valued as an interior parcel having no connection with the water and not as a water front parcel with riparian rights. No compensation having been awarded for riparian rights, the question is whether claimant has any such rights, and, incidentally, if claimant has such rights, whether the value is more than nominal.

The city's contention rests on the fact that on July 25, 1916, one Butterley, who was then the owner of a considerable tract of land fronting on the Harlem river, including the parcel in question, entered into an agreement with the city of New York fixing and determining the line of high water in front of the upland as a straight line or lines in pursuance of the provisions of section 818a of the Greater New York charter, and that in pursuance of the provisions of section 205 of the charter of the city, the city sold and conveyed to the upland owner lands under water inside of the high-water line thus established; and purchased from the upland owner the lands owned by him outside of such line, thereby exchanging lands under water inside such line for lands outside of such line. The result was that Butterley

parted with a portion of his lands not actually contiguous to the water in the sense that they were above the natural line of high water. The line thus established is conventional and artificial and has no immediate relation to the natural line.

By the deed of exchange made between the parties Butterley conveyed to the city " All the right, title and interest of the parties hereto of the second part in and to all the land and land under water, situate and being in the Borough of Manhattan, City of New York, and lying easterly of the hereinbefore mentioned and described boundary line and between the northerly line of West 202nd Street, and the southerly boundary line of West 206th Street.

" Together with the appurtenances and all the estate and rights of the said party of the second part in and to said premises," and the city made a similar conveyance to Butterley of the premises lying west of the line.

A riparian owner is one who owns to the *ripa* or bank of a river; one who owns to high-water mark. Riparian rights are incident to such ownership, passing with the transfer of the land, although not designated as such in the conveyance. Title thereto may not be taken without compensation. In general terms they connote the right and profit to the owner of the upland arising from its connection with the water, such as the easements of passage and use, subject, however, to governmental regulation for the improvement of navigation. (*Matter of City of New York*, 168 N. Y. 134; *Appleby* v. *City of New York*, 235 N. Y. 351; *Matter of Appleby* v. *Delaney*, 235 N. Y. 364.) They are not dependent upon ownership of the shore and are the same whether or not the riparian owner owns the soil under water.

As between the parties, prior to the agreement and exchange of rights, Butterley's upland extended to the natural high-water line, while the city, subject to the power and control of the Federal government, owned the

lands under water, the bed of the river, below high-water mark, in trust for the public for the purposes of navigation. By virtue of such agreement and exchange, his upland extended to and was limited by the agreed high-water line. The object of the statute and the transactions between the parties under it obviously was to establish a definite line of division between the upland, which might be devoted to any lawful use, and the lands under water which the city might improve for the benefit of navigation. Butterley remained a riparian owner. The parties, as appears by the terms of their agreement, had in contemplation the improvement of navigation which would again bring the lands of the riparian owner attingent on the water, so that the owner might construct bulkheads along the arbitrary lines of high water as thus fixed. Appurtenant to what Butterley conveyed to the city were all rights of riparian ownership incident to the lands conveyed. Appurtenant to what the city conveyed to Butterley were all rights of ownership incident to such lands. Butterley retained all his other riparian rights and they passed to claimant as his successor in title. An artificial boundary line between the riparian owner and the city was substituted for the natural line. The effect doubtless was to make claimant's access to the water of less value than it would be if the land inside the artificial line was actually rather than theoretically contiguous to the water. Without passing on the elements of damage involved in the taking of claimant's riparian rights at this time, it is clear that they are of value even though such value might be destroyed by the improvement of navigation without compensation to abutting upland owners. They have not been so destroyed and, perhaps, never will be. The city is taking title to claimant's lands for municipal purposes, not destroying their value incidentally and consequentially by exercising its dominant right to improve the adjacent waters for the purposes of navigation.

On the question of evidence of sales of neighboring lands with riparian rights, after title to claimant's land had vested in the city, we are of the opinion that such evidence might have been received but that no legal error was committed in excluding it.

Orders appealed from reversed, with costs in all courts, and proceeding remitted to the Special Term to consider and award compensation to claimant as a riparian owner.

Hiscock, Ch. J., Cardozo, Crane, Andrews and Lehman, JJ., concur; McLaughlin, J., absent.

Orders reversed, etc.