In the Matter of the City of New York, Appellant, Relative to the Closing and Discontinuance of a Portion of 12th Avenue from West 55th Street to West 57th Street, in the Borough of Manhattan.

Edgar T. Appleby et al., Respondents.

In the Matter of the City of New York, Appellant, Relative to Acquiring Title to Real Property Required for the Widening of East River Drive from East 100th Street to East 102nd Street, etc., in the Borough of Manhattan.

George W. Cornell, as Administrator C. T. A. of the Estate of William H. Schmohl, Deceased, as Assignee, Respondent.

Reargued May 22, 1946; decided July 23, 1946.

*Ignatius M. Wilkinson, Corporation Counsel (Louis M. Weintraub, Julius Isaacs, Leo Brown* and *Samuel K. Handel* of counsel), for appellant in first above-entitled proceeding. I. Damage parcel No. 4, granted by the city to respondents' predecessors in 1889, was land under water outshore of the high water line of the Hudson River. As such, it was inalienable and the grant purporting to convey it was null and void. Since the parcel continued in the city's ownership, the city is entitled to the award herein, and not the respondents. (*Sage v. Mayor,* 154 N. Y. 61; *Williams v. Mayor,* 105 N. Y. 419; *City of New York v. Wilson & Co.,* 278 N. Y. 86; *Matter of City of New York* [*Piers Old Nos. 8–11*], 228 N. Y. 140; *American Ice Co. v. City of New York,* 217 N. Y. 402; *Langdon v. Mayor,* 133 N. Y. 628; *Kingsland v. Mayor,* 110 N. Y. 569; *Burbank v. Fay,* 65 N. Y. 57; *People ex rel. Blakslee v. Commissioners,* 135 N. Y. 447; *Hinckley v. State,* 234 N. Y. 309; *Harway Improvement Co. v. Partridge,* 203 App. Div. 174, 236 N. Y. 563; *Consolidated Ice Co. v. Mayor,* 166 N. Y. 92; *Wells v. Johnston,* 171 N. Y. 324; *People v. Santa Clara Lumber Co.,* 213 N. Y. 61; *Donovan v. City of New York,* 33 N. Y. 291; *Lyddy v. Long Island City,* 104 N. Y. 218; *Knickerbocker Ice Co. v. 42d St. R. R. Co.,* 176 N. Y. 408.) II. By Laws of 1871, chapter 574, all city-owned land outshore of the high water line was made inalienable. The trial court, therefore, erred in holding that Laws of 1882, chapter 410, section 729, limited this broad prohibition against alienation by permitting alienation of land under water inshore of the exterior line of the city. Damage parcel No. 4 was inalienable since it was land under water outshore of the high water line. The Act of 1882 (ch. 410) did not authorize the city to alienate land under water. (*City of New York v. Wilson & Co.,* 278 N. Y. 86; *Matter of City of New York* [*Piers Old Nos. 8–11*], 228 N. Y. 140; *People ex rel. B. P. Comm. v. Common Council,* 229 N. Y. 1; *Grill v. City of New York,* 282 N. Y. 471; *Pratt Institute v. City of New York,* 183 N. Y. 151; *Heckmann v. Pinkney,* 81 N. Y. 211; *City of Buffalo v. Lewis,* 192 N. Y. 193;

*United States* v. *Tynen,* 11 Wall. 88; *Ely* v. *Holton,* 15 N. Y. 595; *Matter of Prime,* 136 N. Y. 347; *Contractors' Supply Co.* v. *City of New York,* 153 App. Div. 60; *City of New York* v. *D. L. & W. R. R. Co.,* 206 App. Div. 228, 237 N. Y. 398; *Matter of City of New York* [*Triborough Bridge*], 159 Misc. 617, 257 App. Div. 940, 257 App. Div. 267.) III. The high water line, and not the exterior line, is the boundary of inalienablity. (*City of New York* v. *Wilson & Co.,* 278 N. Y. 86; *City of New York* v. *D. L. & W. R. R. Co.,* 237 N. Y. 398; *Matter of City of New York* [*Piers Old Nos. 8–11*], 228 N. Y. 140; *Headley* v. *City of Rochester,* 272 N. Y. 197; *Matter of City of New York* [*Saratoga Ave.*], 226 N. Y. 128; *Knickerbocker Ice Co.* v. *42d St. R. R. Co.,* 176 N. Y. 408.) IV. Title to Damage parcel No. 4 was not adjudicated or determined in the 1933 proceeding and the final decree, is, therefore, not *res judicata* in this proceeding on the issue of title. (*Matter of City of New York* [*12th Ave.*], 90 N. Y. L. J. 2333; *Merriman* v. *City of New York,* 227 N. Y. 279; *Brooklyn, Queens County & Suburban R. R. Co.* v. *Bird,* 78 Misc. 683, 156 App. Div. 887; *McAneny* v. *N. Y. C. R. R. Co.,* 238 N. Y. 122; *Karameros* v. *Luther,* 279 N. Y. 87; *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.,* 250 N. Y. 304; *Cook* v. *Conners,* 215 N. Y. 175; *Matter of City of New York* [*Jamaica Bay-Hanburg*], 250 App. Div. 124, 275 N. Y. 458; *Matter of City of New York* [*Jamaica Bay*], 258 App. Div. 191, 284 N. Y. 677; *Jarvis* v. *Lynch,* 157 N. Y. 445; *Brooklyn Queens Co. & S. R. R. Co.* v. *Bird,* 78 Misc. 683, 156 App. Div. 887; *City of New York* v. *Wilson & Co.,* 278 N. Y. 86; *Matter of City of New York* [*Dickens Ave.*], 238 App. Div. 850, 262 N. Y. 699.)

*Edward R. Finch, Thomas F. Powers* and *Banton Moore* for respondents in first proceeding. I. The premises in suit consisted of upland as recognized both by the Legislature in statutory enactment (L. 1837, ch. 182), and by the city through its administrative acts in carrying out the purposes of the statute. II. It is *res judicata* that the city has no claim to the premises in suit. (*Stoeve* v. *Schinasi,* 236 App. Div. 102; *Herder* v. *Clifford,* 252 N. Y. 141; *Woodford* v. *Rasbach,* 6 N. Y. Civ. Pro. Rep. 315; *Blair* v. *Bartlett,* 75 N. Y. 150; *Reich* v. *Cochran.* 151 N. Y. 122.) III. Chapter 574 of the Laws of 1871 is not applicable to the upland here in suit but only relates to wharves, piers, docks, bulkheads, slips and basins and the land beneath

the same. (*City of New York* v. *D., L. & W. R. R. Co.,* 237 N. Y. 398.) IV. Over thirty years prior to the 1871 statute (L. 1871, ch. 574) the land granted to Appleby had ceased to be a part of the water front and had become upland through the interposition of 12th Avenue and Exterior Street. The actions of the State and city in treating this as upland furnishes ample evidence in support of the findings of the trial court and the affirmance by the Appellate Division. (*Williams* v. *Mayor,* 105 N. Y. 419; *City of New York* v. *Third Avenue Ry. Co.,* 294 N. Y. 238.) V. Chapter 574 of the Laws of 1871 related solely to the wharves and piers and the land under water constituting the water front. At the time of the enactment of chapter 574 of the Laws of 1871, the land conveyed to Appleby did not face on the water front but on 12th Avenue which effectually cut it off from the water front. It was not water front property but upland property over fifty years before the deed to Appleby and over thirty years before the enactment of chapter 574 of the Laws of 1871. (*Matter of City of New York* [*Piers Old Nos. 8–11*], 228 N. Y. 140; *Williams* v. *Mayor,* 105 N. Y. 419.)

*Joseph V. McKee* and *C. Elmer Spedick* for Title Guarantee and Trust Company, *amicus curiæ,* in support of respondents' position in first proceeding. I. The order appealed from should be affirmed. (*Matter of City of Niagara Falls* v. *P. S. Comm.,* 229 N. Y. 322; *City of New York* v. *Wilson & Co.,* 278 N. Y. 86; *City of New York* v. *Third Avenue Ry. Co.,* 294 N. Y. 238.) II. Appellant's assertion that by chapter 574 of the Laws of 1871, all city-owned land outshore of the high water line was made inalienable, is without foundation in fact or law. (*Colonial City T. Co.* v. *Kingston R. R. Co.,* 154 N. Y. 483.) III. In 1871 the land conveyed to Appleby was not waterfront property in use or reserved for public purposes; it was not affected by the provisions or limitations of the 1871 statute.

*Ignatius M. Wilkinson, Corporation Counsel* (*Louis M. Weintraub, Julius Isaacs* and *Leo Brown* of counsel), for appellant in second above-entitled proceeding. I. Damage parcel No. 17, granted by the city to respondent's predecessors in 1893, was land outshore of the high water line of the East River. As such it was inalienable and the grant purporting to convey it was null and void. Since the parcel continued in the city's owner-

ship, the city is entitled to the award therefor, and not respondent. (*Sage* v. *Mayor,* 154 N. Y. 61; *Williams* v. *Mayor,* 105 N. Y. 419; *City of New York* v. *Wilson & Co.,* 278 N. Y. 86; *Matter of City of New York* [*Piers Old Nos. 8–11*], 228 N. Y. 140; *American Ice Co.* v. *City of New York,* 217 N. Y. 402; *Langdon* v. *Mayor,* 133 N. Y. 628; *Kingsland* v. *Mayor,* 110 N. Y. 569; *Burbank* v. *Fay,* 65 N. Y. 57; *People ex rel. Blakslee* v. *Commissioners,* 135 N. Y. 447; *Hinkley* v. *State,* 234 N. Y. 309; *Harway Improvement Co.* v.. *Partridge,* 203 App. Div. 174, 236 N. Y. 563; *Wells* v. *Johnston,* 171 N. Y. 324; *People* v. *Santa Clara Lumber Co.,* 213 N. Y. 61; *Donovan* v. *City of New York,* 33 N. Y. 291; *Lyddy* v. *Long Island City,* 104 N. Y. 218.) II. By Laws of 1871, chapter 574, all city-owned land outshore of the high water line was made inalienable. The trial court therefore erred in holding that Laws of 1882, chapter 410, section 729, limited this broad prohibition against alienation by permitting alienation of land under water inshore of the exterior line of the city. Damage parcel No. 17 was inalienable since it was land outshore of the high water line. The Act of 1882 (ch. 410) did not authorize the city to alienate land under water. (*People ex rel. B. P. Comm.* v. *Common Council,* 229 N. Y. 1; *Chase* v. *United States,* 256 U. S. 1; *Pratt Institute* v. *City of New York,* 183 N. Y. 151; *United States* v. *Tynen,* 11 Wall. 88; *Ely* v. *Holton,* 15 N. Y. 595; *Contractors' Supply Co.* v. *City of New York,* 153 App. Div. 60; *City of New York* v. *D., L. & W. R. R. Co.,* 206 App. Div. 228, 237 N. Y. 398; *Matter of City of New York* [*Triborough Bridge*], 159 Misc. 617, 257 App. Div. 940, 257 App. Div. 267; *Matter of City of New York* [*Piers Old Nos. 8–11*], 228 N. Y. 152.) III. The high water line, and not the exterior line, is the boundary of alienability. (*Sage* v. *Mayor,* 154 N. Y. 61; *Peterson* v. *City of New York,* 260 N. Y. 156; *Vilias* v. *Featherson,* 94 App. Div. 259; *Matter of City of New York* [*Triborough Bridge*], 159 Misc. 617.)

*C. Elmer Spedick* for respondent in the second above-entitled proceeding. The sale involved herein was legal and claimant's title is good. (*American Ice Co.* v. *City of New York,* 217 N. Y. 402; *Matter of the City of New York,* 217 N. Y. 1; *Grimmer* v. *Tenement House Department,* 205 N. Y. 549; *Matter of City of New York* [*Piers Old Nos. 8–11*], 228 N. Y. 140; *Matter*

*of City of New York [Willard Parker Hospital]*, 217 N. Y. 1; *Matter of City of Niagara Falls* v. *P. S. Comm.*, 229 N. Y. 322; *Crane* v. *Bennett*, 177 N. Y. 106.)

CONWAY, J. Questions affecting the titles to two pieces of property are presented in these two proceedings and, since the same rules of law are applicable, they will be treated together. In the first, the closing proceeding (12th Avenue), the parcel affected is part of one which extended from the original line of high water, as shown on the Randel Map of 1820, westerly to the easterly line of 12th Avenue, as extended by act of the Legislature (L. 1837, ch. 182) and as laid out on maps filed by the city. The grant was made by the city to the predecessor of claimants on January 14, 1889. At that time, approximately half of the land granted had already been filled in. The other half and the proposed exterior street, 12th Avenue, were still under water. The grant was to the upland owner and the filling in had been projected and supervised by the Department of Docks of the city. A plan providing for the filling in of the land under water up to the easterly line of 12th Avenue had been filed by the Department of Docks and approved by the commissioners of the sinking fund of the city on April 27, 1871. The easterly line of 12th Avenue was within the exterior bulkhead line established at that point on the Hudson River by Laws of 1857, chapter 763.

The other parcel, in the opening proceeding (East River Drive), was deeded by the city on April 6, 1893, to the upland owner, who was the predecessor of claimants. It had concededly been completely filled in under the supervision of the Dock Department prior to the grant. It also was outshore of the original Randel line of highwater but inshore of the 1857 line, to which reference has been made.

It is the contention of the city that, at the times of the grants in question, there was no power in it to alienate any land, whether under water or filled in, which was situated outshore of the Randel highwater line, by reason of Laws of 1871, chapter 574, and Laws of 1873, chapter 335; that those statutes " impliedly repealed " the provision in the 1858 statute (L. 1858, ch. 360) that no grants were to be made of land under water *beyond* the exterior line of the city as fixed by Laws of 1857,

chapter 763, and that the Consolidation Act (L. 1882, ch. 410) although it *reenacted* the pertinent provisions of *all three statutes,* did not save the 1858 provision from such " implied repeal."

Grants of land under water inshore of the exterior city lines were clearly valid before 1871 except for a period between 1855 and 1858, when they were expressly prohibited by statute. See Laws of 1855, chapter 121, section 2, repealed by Laws of 1858, chapter 360; *Matter of City of New York (Willard Parker Hospital),* (217 N. Y. 1, 13). For a grant of land outshore of the highwater line made prior to 1871, which was held valid, see *Appleby* v. *City of New York* (235 N. Y. 351) and *Matter of Appleby* v. *Delaney* (235 N. Y. 364, 366).

In 1855 the Legislature initiated a program for controlling the development of the water front and harbor of the city. (*Matter of City of New York [Willard Parker Hospital],* *supra.*) A harbor commission was appointed for the " preservation of the harbor of New York from encroachments, and to prevent obstructions to the necessary navigation thereof." (L. 1855, ch. 121.) The commission was to make necessary surveys of the harbor and report to the Legislature, recommending the establishment of " such exterior lines   *   *   * *beyond which,* no erection or permanent obstruction of any kind should be permitted " (§ 1). (Emphasis supplied.) No grants of land under water were to be made until further direction of the Legislature (§ 2). The harbor commissioners having made their report, the Legislature adopted a bulkhead line or line of solid filling as recommended, except that it changed the line in certain areas (L. 1857, ch. 763, passed April 17, 1857). By Laws of 1858, chapter 360, the prohibition in the 1855 act against grants of land under water was repealed, and it was provided that: " No grants are to be made beyond the exterior lines of the city, as fixed by an act of the legislature, passed April seventeenth, eighteen hundred and fifty-seven, entitled ' An act to establish bulkhead and pier lines for the port of New York ' ".

That provision concededly was never expressly repealed but, on the contrary was in substance re-enacted, as we have seen (*supra*), in the Consolidation Act of 1882 (L. 1882, ch. 410, § 729), which prohibited grants of land under water

" beyond the exterior lines of the city, as fixed by an act of the legislature passed April seventeenth, eighteen hundred and fifty-seven * * * as amended by subsequent acts * * * ".

It seems to us that it is a compelling, if not a necessary, inference that when the Legislature declared that " no grants are to be made beyond the exterior lines of the city," it intended that grants inshore of the exterior lines should be valid, and that the factor in determining the power of the city to make grants of land under water was to be the legislatively fixed exterior lines rather than the original Randel highwater line of 1820. (*Williams* v. *Mayor*, 105 N. Y. 419, 430–432; *Matter of City of New York* [*Willard Parker Hospital*], 217 N. Y. 1, 13; *City of New York* v. *D., L. & W. R. R. Co.*, 237 N. Y. 398, 405–406.)

Such an inference, it is true, might yield to an express " sweeping declaration " of inalienability of the sort embodied in section 71 of the Greater New York Charter of 1897. That section — which was enacted after the grants here in question had been made — declared flatly that the " rights of the city in and to its water front, ferries, wharf property, land under water, public landings, wharves, docks, streets, avenues, parks, and all other public places are hereby declared to be inalienable." But, certainly, we find no such clear statutory declaration — or anything similar to it — applicable here.

Nevertheless, it is urged upon us that authorities in this court, particularly *City of New York* v. *Wilson & Co.* (278 N. Y. 86) and *Matter of City of New York* (*Piers Old Nos. 8–11*) (228 N. Y. 140) have so construed the statutes of 1871 and 1873 as to read into them an implied restraint on alienation of any land originally under water outshore of the Randel highwater line.

The statute of 1871 (ch. 574) did not expressly prohibit grants of any of the city's water fronts. That statute (§ 6 [amdg. § 99, subd. 2, of the New York City Government Reorganization Act, 1870]) merely vested in the Department of Docks, created in 1870 " exclusive charge and control " subject to supervision by the sinking fund commissioners " of all the wharf property belonging to the corporation of the city of New York, including all the wharves, piers, bulkheads and structures

thereon, and waters adjacent thereto, and all the slips, basins, docks, *water-fronts, land under water,* and structures thereon and the appurtenances, easements, uses, reversions and rights belonging thereto, which are now owned or possessed by the said corporation, or to which said corporation is or may become entitled, or which said corporation may acquire under the provisions hereof, or otherwise; " and also " the exclusive government and regulation " of all wharves, etc., not owned by the city. Section 6 (amdg. § 99, *supra,* subd. 12) cited by the city, defined the terms " property " and " wharf property ", whenever used in the act, " to mean not only all wharves, piers, docks, bulkheads, slips, and basins, but the *land beneath the same,* and all rights, privileges and easements thereto." (Emphasis supplied.) That statute, therefore, defined the property belonging to the city of which the Department of Docks was to have " exclusive charge and control." The 1873 statute (ch. 335) repealed practically all of the 1871 statute, but saved section 6. It also limited the power of the commissioners of the sinking fund to sell " any city property " so that thereafter they might not sell " wharves and piers." (L. 1873, ch. 335, § 102). The parcels herein were neither wharves nor piers. Quite evidently, the definitions of the properties of which the Department of Docks was to have " exclusive charge and control " under the 1871 statute may not be read into the 1873 statute so as to limit still further the powers of the sinking fund commissioners to sell city lands as declared in section 102 thereof. Thus the 1871 statute effected no repeal of the 1858 statute. It was concerned only with the city's wharf property (*Matter of City of New York* [*Piers Old Nos. 8–11*] *supra; Langdon* v. *Mayor,* 133 N. Y. 628; *Kingsland* v. *Mayor,* 110 N. Y. 569). It neither made mention of any high-water line nor prohibited the grant of any land under water. The 1873 statute prohibited the selling of wharves and piers. The property here involved was *inshore* of the exterior lines fixed by the 1857 statute — *the city's water front* — and was within the power of the city to sell.

*Matter of City of New York* (*Piers Old Nos. 8–11*) (*supra*), involved a claim to title by adverse possession commenced after 1873, to certain piers and a portion of a bulkhead. The property involved clearly fell within the express limitation of the

statute of 1873 on the alienability of "wharves and piers" and it was accordingly unnecessary for the court to determine whether any water front property "other than wharves and piers" was made inalienable by the legislation of 1871 and 1873. Judge Chase's discussion in that case as to "the intention of the legislature to prohibit the alienation of all water front property owned by the city" (228 N. Y. at p. 151), was probably in answer to the contention of claimants' counsel that the exception concerning "wharves and piers" was a restriction only on the power of the commissioners of the sinking fund, rather than a general declaration of inalienability of such property or a restraint on the power of sale of other city agencies, such as the board of aldermen. Judge Chase thus observed that "a power of sale in the *board of aldermen*" would contravene the legislative purpose (228 N. Y. at p. 151). (Emphasis supplied.) Judge Chase did not in terms state that the statute of 1871 was properly interpretable as imposing an *implied* restraint on alienation of all of the city's water front property. His analysis of the legislative purpose may have been only in aid of his interpretation of the scope of the *express* restraint on alienation of wharves and piers imposed by the statute of 1873. It is not clear that he considered specifically the problem of alienability of water front property other than wharves or piers, or the bearing thereon of the statute of 1858 heretofore mentioned. At any rate, the parcels involved here were not water front property. In the opinion of Judge Finch, in *City of New York* v. *Wilson & Co. (supra)* it was recognized that it would be possible to confine the *Piers Old Nos. 8–11* case to the question of whether wharves and piers, rather than land under water, were inalienable. The construction of the statutes urged by the city would run counter to the practical construction of those statutes by the public officers charged with duties and obligations under them. Numerous grants of land under water, such as those involved here, have been made by the city subsequent to 1873. That effect should be given by courts to such a practical construction was pointed out in *Matter of City of New York (Willard Parker Hospital), (supra,* 217 N. Y. 1, 12) which involved the determination of the bulkhead line under Laws of 1857, chapter 763.

Moreover, the validity of the grants made in these cases is clear, even if we assume that the statutes of 1871 and 1873 did by implication prohibit the alienation of " all water front property owned by the city."

Judge CHASE, in his opinion in *Matter of City of New York (Piers Old Nos. 8–11), (supra),* regarded " the intention of the legislature to prohibit the alienation of all water front property owned by the city " as " included in its purpose to authorize and empower the city to obtain and continue to hold complete control of its water front as provided by the statutes." He stated that " a power of sale in the board of aldermen is not only not essential to the accomplishment of the purpose of the legislature and the work of the board of the department of docks but would be antagonistic to and possibly destructive of its work and purpose as defined by the statutes." (228 N. Y. at p. 151.)

As pointed out heretofore, the 1871 statute vested in the department of docks " exclusive charge and control ", subject to specified supervision by the commissioners of the sinking fund, " of all the wharf property belonging to the corporation of the city of New York, including * * * land under water * * *." (L. 1871, ch. 574, § 6 [amdg. § 99, *supra,* subd. 2].)

By section 6 (amdg. § 99, *supra,* subd. 3) it was provided that the board of the Department of Docks should determine upon plans for the water front to be submitted to the commissioners of the sinking fund, and that such plans, when adopted by the commissioners of the sinking fund, " shall be * * * the sole plan according to which any wharf, pier, bulkhead, basin, dock, or slip * * * shall thereafter be laid out or constructed * * * and be the sole plan *and authority for solid filling* in the waters surrounding said city and for extending piers into said waters and erecting bulkheads around said city; and all other provisions of law regulating solid filling and pier and bulkhead lines in said waters are to be deemed to be repealed upon the filing of said plan, if said plan be inconsistent with such provisions of law." (Emphasis supplied.)

In the instant cases, plans duly formulated by the Department of Docks and approved by the commissioners of the sinking fund for improvement and development of the water front in the localities in question provided for the filling in of specified

areas of land under water, including the parcels here involved, and the locating of the water front beyond such land under water and beyond marginal streets laid out on the plans. In the street opening proceeding (*East River Drive*), the land granted had been completely filled in at the time of the grant under the supervision of the Department of Docks; in the street closing case (*12th Avenue*), approximately half of the land granted had been thus filled in at the time of the grant.

The filling in and grant of such land under water was clearly not " antagonistic to and possibly destructive of " the work and purpose of the Department of Docks. The filling in was done in pursuance of " authority for solid filling " granted by plans formulated by the Department of Docks in accordance with the statute, and in effectuation of such plans. By the adoption of such plans, the Department of Docks, the agency vested by the statute with the " exclusive charge and control " of the city's water front property, duly determined that the land under water was not needed for water front purposes and should be converted to upland. It would unduly extend any implied restraint on alienation of water front property beyond the assumed necessities of the statutory objectives, to apply it to land which was thus removed from the category of water front property in the manner prescribed by the Legislature. The land here involved had thus lost its character as water front property long before any grant by the city. (See: 3 McQuillin, Municipal Corporations [2d ed. 1943], §§ 1243, 1242, and cases there cited.)

Nor is it material that in the *12th Avenue* case the filling in had not been completed at the time of the grant to claimants' predecessor. The solid filling having been authorized by the Department of Docks pursuant to the statute, the legislative purposes would not be contravened by the fact that the filling was done even by the city's grantee rather than by the city itself. " Great cities have been built up by grants of land under water. The city of New York has been similarly developed by extending it over submerged lands. The promotion of the commercial prosperity of the port has been one purpose of such grants." (See: *Appleby* v. *City of New York*, 235 N. Y. 351, 362.)

On the other hand, in the *Wilson* case the claimant's predecessors had applied for a grant of the land in question and had been refused; the claimant itself had sought permission to erect

a bulkhead in front of its premises and that, too, had been refused. In brief, there was no official recognition in the *Wilson* case that the land was not, or would not be, required in the future development of the harbor; there was no official act which separated that parcel from the water front or deprived it of its status as water front property. What was there done was done by the upland owners in derogation of the city's rights, without permission from the dock department or any other authorized agency.

Moreover, the rule that " land originally under water is treated as land under water even after it is filled " is not an inflexible one and was not stated to be such. (*City of New York* v. *Wilson & Co.*, 278 N. Y. 86, 97.) The cases cited generally in support of that statement are decisions to the effect that an upland owner — as in the *Wilson* case — cannot acquire title to land under water owned by the State merely by filling it in without a grant or authorization from the State (see cases cited in *City of New York* v. *Wilson & Co., supra,* at p. 97) and in *Hinkley* v. *State of New York* (234 N. Y. 309, 319), or that the riparian rights, as distinguished from ownership, of an upland owner as regards adjacent land under water may continue even after the solid filling in of such land under water (cf. *Tiffany* v. *Town of Oyster Bay,* 234 N. Y. 15; *City of New York* v. *Third Ave. Ry. Co.,* 294 N. Y. 238). To that extent, and for sound reason, the act of filling in is denied operative effect. But those decisions do not establish that land originally under water necessarily retains its character as such for all time and for all purposes. It has thus been recognized that land under water may lose its " character of foreshore " at least for some purposes, with consequent changes in rights and legal relations, where the filling in is pursuant to permission or grant. (Cf. *Tiffany* v. *Town of Oyster Bay, supra,* at p. 20; *Williams* v. *Mayor, supra; Appleby* v. *City of New York, supra,* at pp. 361, 362.)

While the views expressed may render unnecessary consideration of respondent's claim of *res judicata* in the *12th Avenue* case, we treat it briefly. The question of title is not resolved in claimants' favor by an award made to claimants' predecessors in a 1933 street opening proceeding for a different parcel derived from the same source as the parcel in question here.

Since the parcels involved in the two proceedings are not the same, and the question of title was not actually litigated in the earlier proceeding, the claim of *res judicata* can in no event be sustained. (*Matter of City of New York [Jamaica Bay]*, 250 App. Div. 124, affd. 275 N. Y. 458; see *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304, 306, 307; Restatement of Judgments, § 68, subd. (2), and comment c., p. 299.)

The orders should be affirmed, with costs.

DESMOND, J. (dissenting). In 1920 (*Matter of City of New York [Piers Old Nos. 8–11]*, 228 N. Y. 140, 146) and again in 1938 (*City of New York* v. *Wilson & Co.*, 278 N. Y. 86, 97–99) this court, elaborately and at length, construed the acts of 1871 and 1873 which in the present case are relied upon by the appellant city as rendering void the purported grants to claimants' predecessors. In each of those two cited cases this court, in plainest language, said that the 1871 and 1873 statutes made "all water front property owned by the city" absolutely inalienable (see 228 N. Y. at pp. 150, 151, and 278 N. Y. at p. 99). In those two cases there were cited earlier decisions of this court which had construed the same 1871 and 1873 statutes as "ending all private ownerships along the water front" (*Kingsland* v. *Mayor*, 110 N. Y. 569, 578), as causing "the old plan of wharves and piers owned by individuals * * * to be swept away" (*Williams* v. *Mayor*, 105 N. Y. 419, 437) and as accomplishing the "exclusion of all private ownership" (*Matter of Mayor of N. Y.*, 135 N. Y. 253, 263). The plainly stated holdings of this court in all those cases were that the 1871 and 1873 statutes completely, positively and absolutely rendered invalid and without effect any attempted grants by the city, after 1871, of any of its water front property. That some of those cases involved only piers or wharves, or lands under them, is beside the point, since, as this court was at pains to point out in the *Wilson* case (see 278 N. Y. at p. 99) the court in the earlier cases (specifically the *Piers 8–11* case) was construing them (the 1871 and 1873 statutes) "not in terms of their application to piers and wharves alone, but their intent and purpose as a whole."

With equal firmness this court in the *Wilson* case (see 278 N. Y. at p. 99) rejected attempts to argue from the fact that the

city " subsequent to 1871, * * * màde a number of grants under water." " The city ", says the *Wilson* opinion, " is not estopped from asserting its rights by these inconsistent acts, since the errors of law of city employees and officers are not binding upon the city ".

Nor does it help respondents' case that the lands in question had been partly or wholly filled in before the disputed grants were made. Such filled in lands retain their character as " land under water " (*Tiffany* v. *Town of Oyster Bay,* 234 N. Y. 15, 21; *Hinkley* v. *State of New York,* 234 N. Y. 309, 319; *City of New York* v. *Wilson & Co., supra*; see, also, *City of New York* v. *Third Ave. Ry. Co.,* 294 N. Y. 238).

The orders should be reversed, with costs in all courts, and the matters remitted to Special Term for proceedings in accordance herewith.

LEWIS, DYE and FULD, JJ., concur with CONWAY, J.; DESMOND, J., dissents in opinion in which LOUGHRAN, Ch. J., concurs; THACHER, J., taking no part.

Orders affirmed.