(22 Misc. Rep. 389.)

DEXTER et al. v. JEFFERSON PAPER CO. et al.

(Supreme Court, Special Term, Jefferson County. January, 1898.)

1. WATERS AND WATER COURSES—ACQUIRING RIGHT BY PRESCRIPTION.

Fifty years before the action at bar, the grantor of both plaintiffs' and defendant's water powers, owning both banks of the river, constructed three dams stopping the flow of the entire river, and which extended from one bank to an island in the middle of the stream, and thence to another island, and thence to the opposite bank. These dams had maintained a head of 12 feet for all the water powers involved on both banks and on the islands, keeping the water at each dam substantially at its crest. In no other way can the water powers be effectively utilized. More than twenty years after the last grant, defendant bought the islands, and erected works which require substantially all the water in the river at times of low water. *Held*, that plaintiffs have acquired the right by prescription to have the dams abut on the islands, and to maintain the three dams at their present height, and to have the water maintained to the crest of each of said dams.

2. SAME—RIGHTS IN SEVERAL BRANCHES OF STREAM.

The three dams, the islands, and the two branches of the river at the place in question, must be regarded as constituting a single hydraulic work, since the use of either is impracticable without the other.

3. SAME—DAMS.

A right acquired by prescription to abut dams on an island does not carry with it any right to use the water pertaining to either shore of the island.

4. SAME—ADVERSE POSSESSION.

The right to use the water pertaining to the shore of an island owned by another can only be acquired by prescription, by an open and notorious use of the water under claim of right and in hostility to the rights of riparian owners for 20 years.

5. SAME—EFFECT OF NONUSER.

The acquisition of water rights in a stream cannot be predicated on a nonuser by the owner, since he is not required to assert his right to use the water pertaining to his shore until he desires to utilize the same.

6. SAME—INDEFINITE GRANT.

Where the amount of water conveyed by a grant of water powers was indefinite, it should be determined by the conditions which prevailed at the

time the several respective grants on both banks of the river were made by the same grantor, and the interpretation of the parties as evidenced by the amount of water used under such grants, which must be satisfied in the order of their priorities, and cannot be impinged on by subsequent grants.

**7. SAME—CONSTRUCTION OF GRANT.**

A nonnavigable river was divided by an island, and one owning land on both sides thereof at a certain point constructed dams from one bank to the island, and thence to the opposite bank, and granted water powers on both sides of the river. Afterwards he bought the island, and granted water powers on the bank of the river to another. *Held,* that the grantee was entitled to the amount of water specified in his grant from that which pertained to the shore on which he was located, if sufficient for satisfying all the grants previously made pertaining thereto, and, if not sufficient, then from water pertaining to the island.

Action by David E. Dexter, individually and as executor, and others, against the Jefferson Paper Company and others, to determine the rights of the respective parties in and to the water powers on the Black river, in the village of Black River, Jefferson county, N. Y., and to obtain an injunction restraining defendant company from using water in excess of the amount to which it is entitled. Reference ordered to take proofs.

Rogers & Atwell, for plaintiffs Dexter.
Purcell & Carlisle, for plaintiff Empire Wood-Pulp Co.
Elon R. Brown, for defendant Black River Pulp Co.
Porter & Walts (Hannibal Smith, of counsel), for other defendants.

McLENNAN, J. Black river flows through the village of Black River, in the county of Jefferson, N. Y., in a westerly direction, and is divided at the place in question by Poor Island into two streams or branches, called the "North" and "South" branch, respectively. Poor Island is about four-fifths of a mile long, 100 feet wide at the foot, or westerly end, 700 feet wide at the center, and tapers gradually from there to a point at the head. Black river is a fresh-water stream, and at the place in question is nonnavigable. At the foot or westerly end of Poor Island there is a small island called "Mill Island," which also extends east and west, and which further divides the waters of the river, and is separated from Poor Island by a narrow channel. The branch of Black river on the north side of Poor and Mill Islands is wider, and the channel is much deeper, than the south branch, and the two branches are so situate that in times of low water, if the river were in its natural state, the greater portion of the water of the entire river would flow in the north branch, and very little would flow in the south branch. All the water powers involved in this action are made available by the construction and maintenance of three dams, one extending from the north shore of the north branch of the river to the foot of Poor Island, one extending from the foot of Poor Island to the head of Mill Island, and the other extending from the south shore of the south branch of the river to the south shore of Mill Island. These three structures effectively dam the water of the entire river, and, as now constructed, and as they have been maintained for more than 50 years, are sufficient to furnish a head of 12 feet for all the water powers involved in this litigation, and in no other way can the water powers be effectively utilized. If the dam extending across the north

branch to the foot of Poor Island were removed, none of the water powers on the south branch could be made available except in times of very high water, because substantially all the water of the river would flow in the north branch.    If the dam extending from the south shore of the south branch to Mill Island, or the dam extending from the foot of Poor Island to the head of Mill Island, were removed, the water powers pertaining to the north branch could not be made effective, because, when a head of less than nine feet would be reached, the water would set back around the head of Poor Island, and flow into the south branch, and so on unobstructed into the main river, and below all the water powers.    It is essential to the effective and practical use of all the water powers thus pertaining to the north branch, as well as those pertaining to the south branch, that a head of 12 feet should be obtained, and that can only be accomplished by maintaining the three dams above referred to as they are now constructed, and to keep the water at each dam substantially at its crest.    The two branches of the river thus dammed do not constitute and are not intended as storage ponds, but are simply available for the purpose of procuring the proper head of water for each of the water powers.

All the water-power rights involved in this controversy which pertain to Mill Island, the south shore of the south branch of Black river, and the north shore of the north branch of said river, opposite and adjacent to Poor Island, were originally owned by one Christopher Poor, he having become such owner prior to 1830.    While such owner, he constructed or caused to be constructed the three dams above mentioned, abutting, two of them, on Poor Island, as before described. At the time he did not own Poor Island, and did not acquire it, or any interest therein, until the year 1847; but no question is raised in this action as to the right of Christopher Poor to abut the dams in question on Poor Island, and it is substantially conceded by all parties that each water user has acquired the right by prescription to have the said two dams abut on Poor Island, and to maintain, or cause to be maintained, the three dams referred to substantially as they now are, they having so abutted, and having been so maintained for more than 50 years.    The grants of water power to the plaintiffs Dexter, or to their grantors, and under which they now claim, were all made by Christopher Poor between the years 1831 and 1847, and prior to the time when he became the owner of Poor Island, except the grant of the Horton lot, so called, on the south shore of the south branch, which was made by Poor to William J. Young on January 5, 1850, and which is now owned by the plaintiffs Dexter; and also a grant made by Matthew Poor, the devisee of Christopher Poor, as hereinafter described, to Vincent Slater, on December 7, 1855, and by which grant the plaintiffs Dexter claim to be entitled to 300 inches of water for propelling machinery upon Mill Island.    The grants of the water power now owned by the plaintiff, the Empire Wood-Pulp Company, were also made by Christopher Poor prior to the time when he became the owner of Poor Island.    The grant under which the Black River Pulp Company claims was made by Poor to Ray G. Baum, October 2, 1850, while he was the owner of Poor Island.    The defendant Henry C. Dexter also acquired certain rights by grant upon the north shore

of the north branch through a conveyance made by Poor to one O. D. Starkin, dated April 5, 1850, while he, said Poor, was the owner of Poor Island. The defendant Wilcox in like manner acquired water-power rights on the south shore of the south branch through a grant made by Poor to William S. Wilcox, dated January 22, 1852. The defendant Henry C. Dexter also acquired certain water-power rights on the north shore of the north branch by grant from Matthew Poor, the devisee of Christopher Poor, which grant is dated January 2, 1866. Christopher Poor died about the year 1854, leaving a last will and testament, by which Poor Island and all the other water powers then owned by him at the place in question, and which are in controversy here, were devised to Matthew Poor above mentioned. The defendant Jefferson Paper Company acquired its title by deed from Matthew Poor about the year 1887, which deed conveyed the entire westerly end of Poor Island, and included about seven acres of land. The Jefferson Paper Company and all the other defendants except the Black River Pulp Company have entered into an agreement which, as between themselves, determines their respective rights, and there is no controversy as between them.

The grants of water power made by Christopher Poor to the plaintiffs are in many cases indefinite and uncertain, and were made at a time when there was an abundance of water in Black river for all purposes then contemplated. Such grants, however, if strictly construed, would entitle the grantees of powers pertaining to the south branch to nearly, if not quite, the entire flow of the river at periods of low water at the present time. After the defendant Jefferson Paper Company acquired the foot of Poor Island, it erected a paper mill with sufficient machinery to require for its operation substantially all the water that flows in both branches of Black river at times of low water, and it claims the right as riparian owner, by virtue of its said grants, to use all the water which may flow in the north branch of said river to the middle of the stream; and, as before said, the natural condition of the channel and the construction of the dams in question are such as to enable it to use substantially all the water of the entire river at such times, and regardless of anything that the water-power owners upon the south branch may do. At certain seasons during almost every year there is not sufficient water in the entire river to supply the plaintiffs with the amounts specified in their respective grants, and at the same time supply the Jefferson Paper Company with the amount of water required for its purposes. The plaintiffs claim that the three dams before mentioned and Poor Island constitute one hydraulic work, and that they are entitled to the amount of water specified in their several grants, to be taken from the entire pond or the north branch of the river, if necessary; that said grants, where indefinite, are to be interpreted as to amount by the amount of water which they have used under the same; and they also claim that they have acquired by prescription the right to use water pertaining to the north shore of the north branch, and also pertaining to both shores of Poor Island. The defendant Jefferson Paper Company contends that, as against the plaintiffs, it is entitled to the entire flow of water in each branch of the river to the thread of the stream, as riparian owner; that the

grants of Christopher Poor to the plaintiffs in no manner related to the water rights pertaining to Poor Island, or to the north shore of the north branch of the river; and that the plaintiffs, or either of them, have not acquired any right by prescription in or to such water. It will be observed that Christopher Poor was the common grantor through whom all the parties to this action acquired whatever rights they have by grant to the water powers in question; that all of the grants under which plaintiffs claim, with the exception of the grant of the Horton lot, so called, were made by Christopher Poor before he owned, or had acquired any right, title, or interest in or to, Poor Island; that the grants to the defendants the Black River Pulp Company and Henry C. Dexter of their water powers on the north shore of the north branch of Black river were made by Christopher Poor while he owned and was in possession of Poor Island; the only grant pertaining to the south branch made by Christopher Poor while he owned Poor Island was to the defendant Wilcox; that the defendant Jefferson Paper Company acquired its title from Matthew Poor, the devisee of Christopher Poor, after all the other conveyances in question were made. None of the water powers pertaining to Poor Island were in any manner utilized or developed until after the conveyances to the Jefferson Paper Company in 1887. All of the other water powers mentioned in the several grants to the respective parties were developed long before, and have been used for upwards of 50 years.

Upon the facts in this case it must be found:

1. That the owners of the respective water powers have each acquired by prescription the right to have the two dams above mentioned abut on Poor Island, and to maintain or cause to be maintained the three dams at their present height, and substantially as they now are, and to have the water maintained to the crest of each of said dams.

2. That the three dams, Poor Island, and the two branches of Black river at the place in question must be regarded as constituting a single hydraulic work; the use of either being impracticable without the other.

3. That the right acquired to abut the dams in question on Poor Island does not carry with it or give any right to use the water pertaining to either shore of the island. Such right can only be acquired by prescription, by an open and notorious use of the water under claim of right, in hostility to the rights of the riparian owner. That the acquisition of such right cannot be predicated upon the nonuser by the owner, no matter how long continued. That in such case the owner is not required to assert his right to use the water pertaining to his share until he desires to utilize the same.

4. That the plaintiffs Dexter and the Empire Wood-Pulp Company, by virtue of their respective grants, excepting the grant of the Horton lot, so called, are only entitled to the water described therein, as against one-half of the channel adjacent to the south shore of the south branch of Black river, and to Mill Island. That such grants do not entitle them to any water pertaining to Poor Island, or to the north shore of the north branch of the river. They are entitled to have flow in said south branch so much water as naturally flows therein when the three dams are full to the crest, or when 12 feet head is

50 N.Y.S.—36

maintained at each of said dams. That, where the amount of water conveyed is indefinite, it is to be determined by the conditions which prevailed at the time the grants were made, and the interpretation of the parties as evidenced by the amount of water used under such grants. That the grants must be satisfied in the order of their priority, and cannot be impinged upon by subsequent grants.

5. The plaintiff Dexter, by virtue of the grant of the Horton lot, so called, made January 5, 1850, when Christopher Poor was the owner of Poor Island, is entitled to the amount of water therein specified from that pertaining to the south shore of the south branch, if sufficient after satisfying the grants previously made, and, if not, then from water pertaining to Poor Island.

6. The water-power rights of the Black River Pulp Company, situate on the north shore of the north branch, having been acquired by it through a grant made by Christopher Poor while he was the owner of Poor Island, it is entitled to the amount of water specified in said grant from that which pertains to said north shore, if sufficient after satisfying the grants previously made pertaining thereto, and, if not sufficient, then from water pertaining to Poor Island.

7. The same rule applies to the water power now owned by the defendant Henry C. Dexter, conveyed to his grantor, O. D. Starkm, by deed dated April 5, 1851; and also to the grant to the defendant Wilcox by Christopher Poor, dated January 22, 1852; and also to the grant to the defendants Dexter, made by Matthew Poor, the devisee of Christopher Poor, dated January 2, 1866.

8. The defendant Jefferson Paper Company, by virtue of its grant of the foot of Poor Island from Matthew Poor, dated ———, 1887, became entitled to the water which naturally flows in one-half of each of the channels of said river pertaining to Poor Island when a height of 12 feet is maintained at each of the dams before mentioned, unless said Poor or his grantor had previously conveyed some portion of the same, or unless some part thereof has been acquired by others by prescription.

9. Either party to this action may have acquired the right to use water in excess of the amount specified in his grant by prescription, not only of water pertaining to the shore specified in the grant, but also to water pertaining to any other shore or to the entire pond. I have already indicated what is necessary, under the circumstances of this case, to establish such right by prescription. The right to abut the dam on Poor Island gives no right to use the water in the one-half of the channel pertaining to said island. Nonuser of the water-power rights pertaining to Poor Island by Poor, or by his grantors or grantees, no matter how long continued, cannot aid to establish prescription. The right to use water can only be acquired by prescription by showing a continuous adverse user under a claim of right for more than 20 years.

It was agreed between the parties upon the trial of this case that, if proof was deemed necessary, in order to ascertain what amount of water was intended to be conveyed by any of the grants in question, where the amount was indefinite, or to determine what rights had been acquired by prescription by any of the parties, such proof should be

taken before a referee appointed for that purpose. A reference is therefore ordered to take the proofs as to the amount of water intended to be conveyed by the respective grants, where the same is indefinite and uncertain, and also to take such proof as may be offered in relation to any rights that may have been acquired by prescription by any of the parties to this action; and also to take proof as to whether any of the rights so acquired have been abandoned; and also to take such proofs as may be offered as will enable the court to determine what amount of water each of the parties to this action is entitled to, and to report the same with his opinion. Ordered accordingly.