FULTON COUNTY GAS AND ELECTRIC COMPANY, Respondent, *v.* ROCKWOOD MANUFACTURING CO., INC., Appellant.

**Water and watercourses — riparian rights — when riparian owner properly restrained from alternately closing and opening the gates of its dam thus first shutting off supply of water to lower owner and then flooding his dam and wasting the water — judgment not to be interpreted as limiting or restricting right to reasonable use of water — use must be reasonable and in recognition of rights of lower owner.**

1. A riparian owner who has constructed a dam for the development of water power, but has not erected any plant and is not making use of the water at the dam, is properly restrained from closing the gates of its dam at different periods, thus unreasonably shutting off the supply of water coming down to the power house of a lower riparian owner, and, having collected the water in its dam, suddenly, without notice to the plaintiff and at times when the need for water by the plaintiff is at the lowest, opening the gates of its dam thus

discharging several times the natural flow and causing the lower owner's dam to be flooded and the water wasted.

2. A provision of the judgment, however, that in the event that defendant should build a plant it might apply for a modification thereof, should be stricken out as placing an unnecessary burden upon defendant and subject to interpretation as restricting or depriving it of its rights of property as riparian owner. The judgment is not to be interpreted as limiting or restricting the rights of the defendant as riparian owner to a reasonable use of the water in the future.

3. What the subsequent rights of the parties may be when the defendant establishes a plant or attempts to make practical use of the water as a riparian owner must of necessity be dependent upon the circumstances and conditions as they then develop, and the use which the defendant attempts to make. The law applicable to such a situation is that the use must be reasonable and in recognition of the rights of the plaintiff as a lower riparian owner to use the water for the maintenance and operation of its plant.

*Fulton County Gas & El. Co.* v. *Rockwood Mfg. Co.*, 205 App. Div. 787, modified.

(Argued April 4, 1924; decided May 13, 1924.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered June 26, 1923, unanimously affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

*John T. Norton* for appellant. The award in the judgment of nominal damages of six cents has no foundation in either the findings of fact or the evidence. (*Strobel* v. *Kerr Salt Co.*, 164 N. Y. 303; *Clinton* v. *Myers*, 46 N. Y. 511; *Pierson* v. *Speyer*, 178 N. Y. 270; *Duesler* v. *City of Johnstown*, 24 App. Div. 608.) Upon the findings made, the defendant is entitled, on its counterclaim, to an injunction against the maintenance of the Peck dam and storage reservoir; against the shutting off of the natural flow of the stream by the Peck dam; and against the flooding of the stream by the manipulation of the gates in the Peck and Caroga dams. (*Clinton* v. *Myers*, 46 N. Y. 511; *Whalen* v. *Union B. & P. Co.*, 208 N. Y. 1; *Pappenheim* v. *M. E. R. Co.*, 128 N. Y. 436; *Corning*

v. *T. I. & N. Co.*, 40 N. Y. 191; *N. Y. R. Co.* v.
*Rothery*, 132 N. Y. 293; *Scriver* v. *Smith*, 100 N. Y.
471; *Duesler* v. *Johnstown*, 24 App. Div. 608; *Amsterdam
Knitting Co.* v. *Dean*, 162 N. Y. 278; *Smith* v. *Rochester*,
104 N. Y. 674.) The defendant is entitled to an injunc-
tion, upon its counterclaim, enjoining the plaintiff from
maintaining its forebay dam and the flash boards thereon
at the elevation now maintained, which backs the water
impounded by said dam and flash boards upon the
defendant's property, and containing the mandatory
provisions necessary to lower said dam and flash boards
so as to avoid said back flow. (*McCann* v. *Chasm Power
Co.*, 211 N. Y. 301; *Coloney* v. *Farrow*, 98 Sup. Ct. Rep.
88; *Dorman* v. *Ames & George*, 12 Minn. 451; *Bell* v.
*M'Clintock*, 9 Watts, 119; *Mawhinney* v. *Milbrook Woolen
Mills*, 231 N. Y. 294.)

*Fred Linus Carroll* for respondent. By " natural flow "
is not meant the quantity which would be flowing at any
particular time in a stream in its then natural state,
but what would answer substantially to the ordinary
medium average flow between a high and low stage of
the water. (Washb. on Ease. & Serv. [3d ed.] 356;
*Nemasket Mills* v. *Taunton*, 166 Mass. 540; *Middleborough*
v. *Taunton*, 203 Mass. 31; *D. W. Mill Co.* v. *Greer*, 58
Iowa, 86; *Ames* v. *C. R. Mfg. Co.*, 27 Minn. 245; *Dorman*
v. *Ames & George*, 12 Minn. 451; *Bell* v. *M'Clintock*, 9
Watts, 119.) The plaintiff, respondent, had the right to
maintain and use a storage reservoir above its plant for
the purpose of properly developing the water power of
the Caroga creek. (*Gould* v. *Boston Duck Co.*, 13 Gray,
442; *Drake* v. *Hamilton Woolen Co.*, 99 Mass. 574; *Cold-
well* v. *Sanderson*, 69 Wis. 52.) Property in a watercourse
consists in a right to its use; and, as it cannot be used in
the most beneficial manner, and not at all for hydraulic
works, without raising a head of water, there must be
incident to the privilege of use a right to erect a dam and

detain the water long enough to use it to advantage. Neither the occasional increase of the velocity of the current and of the *quantum* of water below, nor the insensible evaporation and decrease of water by dams, will amount to an actionable injury. (*Clinton* v. *Myers,* 46 N. Y. 511; *U. P. B. Co.* v. *I. P. & P. Co.,* 226 N. Y. 38; *Strobel* v. *Kerr Salt Co.,* 164 N. Y. 303; *Merritt* v. *Brinkerhoff,* 17 Johns. 306; *Prentice* v. *Geiger,* 74 N. Y. 341; *Bullard* v. *S. V. Mfg. Co.,* 77 N. Y. 525; *Politt* v. *Long,* 3 T. & C. 232; *Gehlen* v. *Knorr,* 36 L. R. A. 697; *Henderson Estate Co.* v. *Carroll Electric Co.,* 113 App. Div. 775; 189 N. Y. 581.) The acts of the defendant, appellant, were illegal and its contention in regard to its rights in the stream, although it is making, and has made, no use of the waters thereof, cannot be sustained. (*Stevens* v. *Kelley,* 8 East. Rep. 353; *Phillips* v. *Sherman,* 64 Me. 171; *Weare* v. *Chase,* 93 Me. 264; *Fisher* v. *Feige,* 137 Cal. 39.)

CRANE, J. The question in this case involves the respective rights of the Fulton County Gas and Electric Company and the Rockwood Manufacturing Company, Inc., to the use of the waters of Caroga creek in the counties of Fulton and Montgomery, New York. The plaintiff is a public service corporation developing water power to be used in the manufacture of electricity, having a power house and plant on Caroga creek about ten miles or more below Peck's lake and Caroga lake which flow or empty into Caroga creek. At Peck's lake the plaintiff has maintained a dam for the storage of water in order that the uniformity of the flow in Caroga creek might be maintained at all seasons of the year. Near to its plant and power house it has erected and maintained a forebay dam in which it collects water sufficient to operate the plant for twenty-four hours.

Between Peck's lake and the plaintiff's forebay dam the defendant owns property and also has constructed as riparian owner a dam for the development of water power

in connection with any use it might desire to make of Caroga creek as riparian owner. Up to the present time it has not erected any plant and it is not making use of the water at its dam.

In attempting to make certain repairs the defendant closed the gates of its dam at certain periods in 1920, and unreasonably shut off the supply of water coming down to the plaintiff's power house, thereby threatening its use and operation. Having collected the water in its dam, it suddenly, without notice to the plaintiff and at times when the need for water by the plaintiff was at the lowest, opened the gates of its dam discharging about seven times the natural flow, thereby causing the plaintiff's forebay dam to be flooded and the water wasted. As we read the decision in this case, it amounts to a finding that this use of the water by the defendant was an unreasonable and unjustifiable interference with the rights of a lower riparian owner. Both of these parties had a right to make reasonable use of the water. What is reasonable depends upon all the facts and circumstances. The trial court found the facts in substance as stated by me, and determined that the defendant's use was unreasonable. It thereupon entered judgment which in effect restrained this unreasonable use. We do not understand the judgment to go any further than this except in a particular hereinafter mentioned. The judgment for instance does not attempt to dispose of any of the defendant's riparian rights or interfere with their proper and reasonable use. Upon the facts as presented by the plaintiff and the operation by defendant of its dam in January and March and in October of 1920, the trial court by its judgment restrained the defendant from the unreasonable use indicated by the findings. It required the defendant to either keep the gates open and permit the natural flow through the dam or else to keep the gates closed and permit the natural flow over the dam so

8

as to reach the plaintiff's power plant in due course of nature without unreasonable interference. The judgment, as we interpret it, does not go as far as the appellant infers. It in no way prevents it from erecting such plant as it sees fit and using the water of Caroga creek as riparian owner, or the use by it in any other way that a riparian owner under the law is justified in making use of a river or creek which flows by or through his property. The whole feature of this case is the unreasonable use which the defendant made to the injury of the plaintiff in the operation of its dam and gates. This the court restrained and we think rightly. In one feature, however, the court went too far by its judgment. It decreed: " That in case the defendant shall build a plant directly connected with said dam and to be operated by the water impounded therein, the defendant may, upon personal service of an officer or director or the manager of the plaintiff of written notice of the time and place of making such application at least ten days prior to the making thereof, apply to this court, at a Special Term thereof, for a modification of this order, judgment and decree as set forth and specified in said notice."

This, we think, placed an unnecessary burden upon the defendant and might be interpreted as restricting or depriving it of its rights which are rights of property as riparian owner in the use of the creek. We, therefore, modify this part of the judgment by striking it out and substituting therefor the following provision: " The defendant is not enjoined from making use of Caroga creek and of the dam which it has erected for any reasonable purpose which it, as riparian owner, may make of the water flowing through its property in connection with any plant or mill erected or to be erected by it or in connection with any other practical purpose for which a riparian owner may lawfully use water of a river or creek. This use by the defendant must be reasonable — that is, it must recognize and be consistent with the right

of the plaintiff as a lower riparian owner to likewise make use of said water according to its natural flow as found by the court in this case."

This, we think, protects the rights of the plaintiff and of the defendant in this creek. The plaintiff was injured by the unreasonable use made by the defendant of the water. That unreasonable use has been specified by the trial judge and the defendant has been restrained from continuing such acts. This, we think, was right and we affirm the judgment in this particular. We do not, however, desire or intend that the judgment shall limit or restrict the rights of the defendant as riparian owner to a reasonable use of the water in the future. What that reasonable use is, must necessarily depend upon the facts. The plaintiff, it has been determined, is making a reasonable use of the natural flow of the stream for the maintenance and operation of its plant. The defendant, if it may hereafter use its dam in connection with its operations as a riparian owner, must recognize and respect these rights.

It is said, however, that this judgment gives to the plaintiff or may give to the plaintiff the right to maintain its dam as now constructed at Peck's lake. The defendant counterclaimed by asking an injunction against the plaintiff from the maintenance of this dam at Peck's lake and the storing of water as therein accomplished by the plaintiff. This was denied. The denial, we take it, is based upon the facts found that the natural flow of the stream was 100 cubic feet per second or 150 cubic feet per second and that this had not been interfered with by the plaintiff. We do not deem this judgment to have gone so far as to determine ultimately the rights of the respective parties regarding the storage or the amount of storage of water in Peck's lake. The defendant is not now making use of the water as riparian owner. Whenever it attempts to make reasonable use of Caroga creek as a riparian owner the question as to the storage in

Peck's lake may become important and material. At the present time upon the facts in this case the gravamen of the action was the unreasonable use which the defendant made of its dam and the gates thereof, and its illegal interference with the rights of the plaintiff. This, as we have stated, has been rightly enjoined. What the subsequent rights of the parties may be when the defendant establishes a plant or attempts to make practical use of the water as a riparian owner must of necessity be dependent upon the circumstances and conditions as they then develop, and the use which the defendant attempts to make. The law applicable to such a situation is that the use must be reasonable and in recognition of the rights of the plaintiff as a lower riparian owner to use the water for the maintenance and operation of its plant, all of which is found by the trial court to be reasonable.

The judgment should be modified accordingly, and as so modified affirmed, without costs.

Hiscock, Ch. J., Cardozo, McLaughlin, Andrews and Lehman, JJ., concur; Pound, J., absent.

Judgment accordingly.