NEW YORK POWER AND LIGHT CORPORATION, Appellant, *v.* THE STATE OF NEW YORK, Respondent.*
Claim No. 10583.

Third Department, September 26, 1930.

---

* Affg. 128 Misc. 130.

*Monroe & Byrne [John D. Monroe of counsel], for the appellant.*

*Hamilton Ward, Attorney-General [H. J. Cookinham, Jr., Deputy Attorney-General, of counsel], for the respondent.*

VAN KIRK, P. J. This claim against the State is for damages caused to claimant by a dam in the Mohawk river at Crescent, Saratoga county, above the old aqueduct, erected by the State as part of the Barge Canal construction. (Laws of 1903, chap.

147, as amd.) The claim was filed by the Cohoes Company. That company, on January 1, 1918, transferred the claim with all its rights, franchises and privileges in that river to the Cohoes Power and Light Corporation, the predecessor of the present claimant. Claimant has no other grant or concession from the State. Thus the rights granted to the Cohoes Company must be determined.

This company was organized under chapter 90 of the Laws of 1826 as a private corporation to do a hydraulic and manufacturing business solely. It received no grant of lands under the waters of the river, but did receive the right to " erect and maintain a dam across the Mohawk river, opposite the lands belonging to said corporation, above the Great Cohoes Falls, for supplying water necessary for the purpose of said corporation; provided always, that nothing in this act contained shall be so construed as to * * * impair or injure the rights and privileges of the people of this State." It also had the right to construct canals to conduct water from the river to its plants, " provided, That said corporation shall not at any time, by means of their said canals or otherwise, take or use any of the waters of said river which shall now or hereafter be required by the State for the purposes of navigation." The last paragraph of the act provides: " That the rights and privileges hereby granted shall be deemed to be taken subject to the right of the Legislature hereafter to alter, modify or repeal the same."

Chapter 44 of the Laws of 1834, entitled " An act for the relief of the Cohoes Company," contains this: " Whenever, in the opinion of the Canal Commissioners or of the Legislature, it may be necessary to take from the company's pond or works any of the waters of the Mohawk river, the same may be taken for the use of the Erie and Champlain canal, or either of them, at such points and in such manner as the said Commissioners or the Legislature shall deem proper."

By chapter 486 of the Laws of 1884 the Cohoes Company received a further concession from the State which authorized it (section 1) " for the purpose of securing a better supply of water for its hydraulic and manufacturing operations, or for either, to erect a dam across the Mohawk river above the present aqueduct of the Erie canal at Crescent, Saratoga county, and to maintain the same and the pond or reservoir of water thereby made." (Section 2.) " The said company in erecting and maintaining said dam and its abutments and appurtenances may use the bed of said river, and any lands of the people of the State of New York now not used or required for said canal, which were formerly occupied as a part of the Erie canal by the former aqueduct of

the Erie canal at Crescent, now destroyed and its approaches now disused, and any lands adjacent thereto, not now so used or required. The said dam shall be located where its abutments can be placed upon lands now owned, or which, or the right to abut thereon, shall hereafter be acquired by said company, or upon said lands of the people of the State of New York, or partly upon each." There was no further reservation, except that the location, channels and construction plans must first be approved by certain State officers.

These are the acts or grants on which the rights of claimant depend.

The rights granted by the 1884 act have never been exercised. But the Cohoes Company, under the 1826 act, erected a dam about 4,000 feet above the Cohoes Falls with a crest elevation (after some changes) of 154.2 feet and has since used the waters of the river for its hydraulic purposes. This dam, recently, has been raised to a crest elevation of 157 feet, which fact is later discussed.

In the original claim damages were asked for loss sustained by diminishing its pondage rights at its Cohoes dam. That claim was withdrawn; at the same time amended requests to find were filed by the claimant, containing a written statement, to which, for certainty, we refer as follows: The claim is limited " to one for compensation for the taking and appropriation of its lands at and above the aqueduct of the Erie canal at Crescent and its right and franchise to construct and maintain a dam across the Mohawk river above the aqueduct under chapter 486 of the Laws of 1884. These amended requests ask for no compensation for the appropriation of any other property, or for the interference by the State with claimant's use and enjoyment of any rights under chapter 90 of the Laws of 1826. * * * The questions presented by the amended requests to find relate entirely to the value of pondage created by a dam at the aqueduct site utilized under the 92-foot head available at the Cohoes Falls and in connection with claimant's existing development there." In calculating this value the 157 feet crest elevation of the Cohoes dam is used, on the theory that the right of the claimant to erect and maintain a dam at 157 feet crest elevation is superior to the rights of the State " except only the State's right to construct and maintain the barge canal as constructed and now maintained. Or to put it another way, the rights of the Cohoes Company and of claimant under the act of 1826, were and are subject to the right and power of the State to do what it has done in the building of the barge canal; but claimant may maintain under the act of 1826, and under its rights

as a riparian owner, its present dam with a crest elevation of 157 feet, since that dam at such crest elevation does not impair or interfere with the full enjoyment by the State of the navigation project which it has created. * * * The particular right so claimed is the right to maintain its dam at the crest elevation of 157 feet, which has no further or other effect upon the barge canal structure than to raise the water on the lower side of the Crescent dam some 2.8 feet above what it would be if there had been no increase in the crest elevation of claimant's dam. No claim has been made by the State that by so maintaining its dam claimant interferes in the slightest degree with the operation and maintenance of the barge canal."

The dam constructed by the State at Crescent submerged the claimant's privilege to construct and maintain a dam under the act of 1884, and also submerged some of its riparian lands.

Plaintiff's claim is limited to damages for its lands appropriated and for destroying its privileges and pondage rights at its proposed Crescent dam.

There is of course no dispute that it is entitled to recover damages for the lands appropriated for the Crescent dam construction. Our inquiry is thus limited to the rights granted in the act of 1884. Claimant has taken the position that, the Mohawk being a public stream, its rights therein, under the grant of 1826, are "subject to the right and power of the State to do what it has done in the building of the Barge Canal." This is justified by the authorities and applies as well to the grant of 1884.

The Mohawk river is a public, navigable stream; the title to its bed is in the State unless specifically granted. (*People* v. *Canal Appraisers*, 33 N. Y. 461; *Williams* v. *City of Utica*, 217 id. 162; *Danes* v. *State of New York*, 219 id. 67.) " To be navigable, it is not necessary that it should be deep enough to admit the passage of boats at all portions of the stream." (*Danes* v. *State of New York, supra,* 71, citing *St. Anthony Falls W. P. Co.* v. *St. Paul Water Comrs.,* 168 U. S. 349; *Morgan* v. *King*, 35 N. Y. 454.) Rifts and shallows do not affect its general character as a navigable stream; the authority of the State extends over these. (*West Virginia P. & P. Co.* v. *Peck*, 189 App. Div. 286, 292; *Greenleaf Lumber Co.* v. *Garrison*, 237 U. S. 251.) The rights and title in the beds and waters of a navigable stream are controlled by the laws of the State in which the stream is. (*St. Anthony Falls W. P. Co.* v. *St. Paul Water Comrs.,* 168 U. S. 349; *United States* v. *Chandler-Dunbar Co.,* 229 id. 53.) In this State control of the beds and waters of navigable streams rests, as an attribute of sovereignty, in the State in trust for the people and cannot be unconditionally

conveyed. (*Smith* v. *City of Rochester*, 92 N. Y. 463, 479; *Matter of Long Sault Development Co.*, 212 id. 1.) There is an exception to this general rule; the State may unconditionally convey a valid title in the bed and waters of a navigable stream when the conveyance is made for a valuable consideration, in aid of the development of public waters for navigation and commerce or in the interests of the public (*Langdon* v. *Mayor, etc., of City of N. Y.*, 93 N. Y. 129; *Coxe* v. *State of New York*, 144 id. 396; *First Construction Co.* v. *State of New York*, 221 id. 295), but only when it does not unduly interfere with the development of the stream for navigation and commerce. Beyond this the control of navigable waters, for the purposes of the trust under which the sovereign holds it, can never be validly conveyed or lost. (*Illinois Central Railroad* v. *Illinois*, 146 U. S. 387, 453; *Coxe* v. *State of New York*, 144 N. Y. 396; *Matter of Long Sault Development Co.*, 212 id. 1; *Appleby* v. *City of New York*, 235 id. 351.) In *Appleby* v. *City of New York* (271 U. S. 364, 395; 235 N. Y. 351) Chief Justice TAFT said that the Illinois case (*supra*) was necessarily a statement of Illinois law, but the general principle and the exception have been recognized the country over and have been approved in several cases in the State of New York, and then quotes from *Coxe* v. *State of New York* (*supra*), as follows: " The title which the State holds and the power of disposition is an incident and part of its sovereignty that can not be surrendered, alienated or delegated, except for some public purpose, or some reasonable use which can fairly be said to be for the public benefit."

Grants of gift, not made to improve navigation or in the interests of the public, are conditional grants and are made subject to the paramount right of the State to improve the stream. The State holds the title to lands under the waters as proprietor and may convey, without consideration, such lands or the right to use them. In such grants, however, there is an implied reservation of the public right; they will be construed against the grantee and, when they contain no words excluding governmental control of the waters, they are subject to the *jus publicum*. When the State assumes control of a stream and in executing its plan of development uses rights granted conditionally, it does not take property within the meaning of the Constitution, article 1, section 6, which requires compensation. In exercising its sovereign right of control it is not subject to such burden. (*Lewis Blue Point Oyster C. Co.* v. *Briggs*, 198 N. Y. 287; *Sage* v. *Mayor*, 154 id. 61; *Lansing* v. *Smith*, 4 Wend. 9; *Shively* v. *Bowlby*, 152 U. S. 1, 32; *Union Bridge Co.* v. *United States*, 204 id. 364, 389; *People* v. *N. Y. & S. I. Ferry Co.*, 68 N. Y. 71, 79, 80.)

We need not here consider the rights of the Federal government in this public stream; it has asserted no right therein above the Cohoes Falls and, until it does, the State's power and rights are plenary. (*Appleby* v. *City of New York*, 235 N. Y. 351, 361.)

The determination to canalize the Mohawk river was a lawful exercise of the legislative power to promote navigation and commerce. In adopting its plan of development the State acted as sovereign. Its plan was reasonable and not subject to question in the courts. (*United States* v. *Chandler-Dunbar Co.*, 229 U. S. 53; *Shively* v. *Bowlby*, 152 id. 1, 32.) It is not needful to consider what would be claimant's rights if it had constructed its dam before the State acted; its right must yield to the State's discretion. When the State constructed its dam it terminated claimant's privilege. (*People* v. *N. Y. & S. I. Ferry Co.*, *supra*, 80.) The primary use of public streams is for purpose of navigation; the erection of piers or dams in them to improve navigation is entirely consistent with such use and infringes upon no right of the riparian owner. (*Union Bridge Co.* v. *United States*, 204 U. S. 364.) There are no dams in the Mohawk which will interfere with the full use of the stream for canal navigation. The State's plan required the use of the complete site of claimant's proposed dam; without using it the State could not carry out its plan. The privilege to claimant of building and maintaining a dam did materially interfere with the State's plan. Without the construction of the dam by the State it could not exercise its sovereign right of control. An expectation that the claimant might at some future time construct a dam which might supply the State's need does not militate against its rights to build its dam. The State need not suspend its service to the people until claimant sees fit to exercise its privilege.

Chapter 486 of the Laws of 1884 does not purport to convey title to any part of the bed of the stream. It was a grant of gift, a donation, undoubtedly made at the request of the Cohoes Company. It was made solely for the beneficial use of that company and not for any public purpose or benefit. It contains no words excluding government control of the waters or the lands thereunder. There was no stipulation in the grant that the grantee should do anything in consummation of the purposes of the grant. The Cohoes Company received thereby simply a license or privilege to build and maintain a dam. Nine years passed, after this act, before the Barge Canal was contemplated and nothing was done towards developing the privilege granted, nor has anything to that end been done since. The small stone construction on the border of the stream, which is said to have cost $800, could not have been

a part of the proposed dam or any part of a construction in connection therewith. No dam was to be located where this stone construction was made; if it were, the small outlay would justify little consideration.

We think, therefore, that, in carrying out its plan and thus depriving claimant of its privilege, the State did not subject itself to a claim for compensation.

We find nothing in the *First Construction Case* (221 N. Y. 295) in conflict with this view. In that case the grants were in the public interest and provided for development of the water front in aid of commerce and navigation. They were grants of that to which the State, for a valuable consideration, could convey absolute title, not subject to the paramount rights of the State. The subject of the grants did not materially interfere with the full development of the harbor by the State or Federal government; and the court found consideration for the grants. It said (pp. 317, 318) they were " ' not nude pacts, but rest upon obligations expressly or impliedly assumed to carry on the undertaking to which they relate. * * * They are made and received with the understanding that the recipient is protected by a contractual right from the moment the grant is accepted and during the course of performance as contemplated, as well as after that performance.' " The instant case is very different. The grantee assumed no obligation to erect a dam or to do anything in the exercise of its privilege, and the State could not develop the stream according to its plan without terminating claimant's privilege. We think also that the facts distinguish this case from *Waterford El. L., H. & P. Co.* v. *State of New York* (208 App. Div. 273; affd., without opinion, 239 N. Y. 629).

If we are right in our conclusion above stated, it is immaterial whether or not the right of the State to use the waters of the Mohawk river for navigation purposes is reserved in the grant of 1884; at the same time we think the Court of Claims was right in holding that there is such reservation. The necessary reservation is specifically stated in the acts of 1826 and 1834. If, in the act of 1884, there is no such provision, we think that such reservation is implied. (*Lansing* v. *Smith*, 4 Wend. 9, 24; *People* v. *N. Y. & S. I. Ferry Co.*, 68 N. Y. 71, 76, 79; *Lewis Blue Point Oyster C. Co.* v. *Briggs, supra*, 292; *Sage* v. *Mayor*, 154 N. Y. 61, cited in *Scranton* v. *Wheeler*, 179 U. S. 161.) Otherwise the act would abdicate the State's sovereign right in this public stream. Also the act of 1884 (*supra*) is not an independent grant; it was made simply in aid of the privileges granted in the act of 1826 (*supra*), namely,

to secure " a better supply of water for its hydraulic and manufacturing operations." The acts should be construed together.

Further, it does not appear that the claimant will be deprived of its rights as sought to be established under this claim for damages. Had the claimant exercised its privileges and constructed its dam at Crescent it might not have been necessary for the State to construct its dam. Without question the State then could have drawn water for its canal from the pond created by a Crescent dam built by claimant. For a hundred years it has been the policy of this State to supply water to the Erie and Champlain canals from the Mohawk and Hudson. The amount of water so drawn is comparatively trivial. Whether the dam be built by the State or claimant substantially the whole stream must pass over or by the Crescent dam; it would, not be used by the State for navigation purposes. It does not appear that the State intends to interfere with such flow of the stream. If it should attempt to use the waters it would naturally be by leasing the power. If it did lease the power its act would be that of a proprietor, not of a sovereign, and the waters used at the dam would have to be returned into the stream below the dam; that is, into the pond formed by the Cohoes dam. So that the claimant would have the use of the waters of the river except the comparatively small amount diverted through the canal. Claimant is a riparian owner and has the right to use on its property the waters of this public stream. ( *United Paper Board Co.* v. *Iroquois Pulp & Paper Co.*, 226 N. Y. 38; *Fulton County G. & El. Co.* v. *Rockwood Mfg. Co., Inc.*, 205 App. Div. 787; modfd., 238 N. Y. 109.) None of its riparian lands below the Crescent dam have been appropriated. It is true that had claimant built a dam it, to a reasonable extent, could have controlled the pondage and discharge of water at the dam (*Clinton* v. *Myers*, 46 N. Y. 511); but this control would have to yield to the State's right to use the stream and its waters for canal purposes as it must yield now. The pond must be kept of sufficient depth to carry the canal traffic in the river and canal. At the same time the claimant has been saved the expense of building and maintaining a dam. There is a failure of proof showing what, if any, damages the claimant has suffered under these conditions.

Should the State attempt hereafter to use the waters of the river from the Crescent dam pond, otherwise than for navigation purposes, and that use should interfere with claimant's rights, it could then have its day in court to protect its rights. In this connection we refer to the refusal of the Court of Claims to find that claimant was entitled to maintain its Cohoes dam at the crest elevation of 157 feet. The effect of maintaining the dam at

this level, rather than at 154.2 feet, would result in diminishing the head at the Crescent dam by 2.8 feet. If the State later asserts a right to have the Cohoes dam maintained at the lower elevation, claimant may then defend. In our view this issue was not before the Court of Claims; all findings and refusals to find in respect thereto should be stricken from the record without any expression by this court as to the proper crest elevation of the Cohoes dam. We should not attempt to foretell what the State may sometime do in respect to the power at the Crescent dam.

We have not overlooked the fact that claimant is the assignee of rights granted originally by other legislative acts and to other grantees which have been transferred to the Cohoes Company. But these have not increased or altered the right of claimant as hereinabove stated.

Judgment for the value of the lands appropriated has been awarded. This is a question for the Court of Claims. Its finding is justified by the evidence. Claimant's power development is located wholly on the south side of the river. At the time of the appropriation claimant owned no lands on the south bank at the site of the proposed Crescent dam and pond. Claimant purposed to use the waters from the Crescent pond solely in aid of its developments at the Cohoes dam; it has not intended to generate power at the Crescent dam and has not shown damages because excluded therefrom.

The judgment should be affirmed, with costs.

HINMAN and WHITMYER, JJ., concur; HILL, J., dissents on the authority of *Waterford El. L., H. & P. Co.* v. *State of New York* (208 App. Div. 273); HASBROUCK, J., dissents, with an opinion.

HASBROUCK, J. (dissenting). The facts necessary to be stated to disclose the legal propositions involved in the controversy at bar are simple.

In 1826 the Legislature passed an act to incorporate the Cohoes Company and granted it the right and franchise to " erect and maintain a dam across the Mohawk River, opposite the lands belonging to said corporation, above the Great Cohoes Falls, for supplying water necessary for the purpose of said corporation; provided always, that nothing in this act contained shall be so construed as to injure, affect or impair the rights and privileges of any person or persons, or of any corporation heretofore granted, or to impair or injure the rights and privileges of the people of this State." (Laws of 1826, chap. 90, § 4.)

" This act shall be deemed and considered in all courts and

places as a public act, and the same shall be construed benignly and favorably, for every beneficial purpose." (Id. § 10.)

" The rights and privileges hereby granted shall be deemed to be taken subject to the right of the Legislature hereafter to alter, modify or repeal the same." (Id. § 13.)

In 1884 the Legislature passed an act in which it authorized the Cohoes Company for the purpose of securing a better supply of water for its hydraulic and manufacturing operations, or for either, to erect a dam across the Mohawk river above the present aqueduct of the Erie Canal at Crescent, Saratoga county, and to maintain the same and the pond or reservoir of water thereby made; and to excavate or construct channels or canals along or in the bed of said river for the purpose of drawing and using the water from the said dam or reservoir for the hydraulic or manufacturing operations of said company. (Laws of 1884, chap. 486, § 1.)

" The said company in erecting and maintaining said dam and its abutments and appurtenances may use the bed of said river, and any lands of the people of the State of New York now not used or required for said canal, which were formerly occupied as a part of the Erie Canal by the former aqueduct of the Erie Canal at Crescent, now destroyed and its approaches now disused, and any lands adjacent thereto, not now so used or required. The said dam shall be located where its abutments can be placed upon lands now owned, or which, or the right to abut thereon, shall hereafter be acquired by said company, or upon said lands of the people of the State of New York, or partly upon each." (Id. § 2.)

The grant of the right and franchise described in the act of 1884 is not made in words subject to the provisions of the act granting the right and franchise to build what is known as the Cohoes dam.

The Cohoes Company in 1831 built a wooden dam some 4,000 feet above the Cohoes Falls on the Mohawk river at an elevation of 154.2 Barge Canal datum.

In 1865 the Cohoes Company built a stone dam behind the wooden dam having the same elevation at its crest.

In the promotion of its corporate purposes the Cohoes Company expended during ninety years hundreds of thousands of dollars to furnish water and power to upwards of thirty-two concerns that used the same.

Whatever dispute there may be as to the right of the Cohoes Company to maintain its dam with a crest of 157 feet Barge Canal datum, there is no dispute of its right to maintain its dam with a crest of 154.2 Barge Canal datum.

Under the grant to the claimant's predecessor in title found in chapter 486 of the Laws of 1884, *supra*, the Cohoes Company had acquired or purchased lands along the Mohawk river above and below the canal aqueduct at Crescent and, as above enacted, the right to use the State's lands. The Cohoes Company also, as required by this act, had gone to the expense of preparing a plan for such dam and secured the approval of the Superintendent of Public Works and the State Engineer and Surveyor of the same. The purpose of the company in acquiring such right and franchise was the extension and enlargement of its business or its protection against competition.

Upon the river near the site of the new dam claimant's predecessor expended $377 on the same. (Claimant's Exhibit 104.)

Besides all this it is the contention of the respondent here that the act of 1884 must be read in connection with the act of 1826; that these two acts reflect the single purpose of the corporation. To that contention I do not yield. However, if such construction be assumed then it follows that the great development already undertaken at the Cohoes dam should function as part of the acceptance and use of the rights granted for the dam above the canal aqueduct, because such new dam was to be used in connection with the first.

In the years between 1884 and 1895 agitation of the project to enlarge the canal system of the State took place which resulted afterwards in chapter 79 of the Laws of 1895; chapter 794 of the Laws of 1896; chapter 43 of the Laws of 1897, and chapter 569 of the Laws of 1897, contemplating the expenditure of $9,000,000 for the enlargement of the canals. Naturally there was a halt in the building by the claimant's predecessor of the dam above the canal aqueduct. The wisdom and foresightedness of the Cohoes Company in securing the means by the franchise of 1884 of meeting the needs of its developing business cannot be doubted.

The State in presenting its requests to find to the Court of Claims asked it to find " That the franchise right, if any, possessed by the Cohoes Company, to construct a dam at the site referred to in Chapter 486, Laws of 1884, was abandoned and lost prior to November 30, 1909." That request was refused.

Again the State requested this finding: " That Chapter 147, Laws of 1903, operated to revoke and annul the franchise, if any, granted to the Cohoes Company by Chapter 486, Laws of 1884." This request to find was also refused.

This case cannot be decided without determining the property rights and privileges of the claimant in the Mohawk by virtue of the acts of 1826 and 1884.

The Mohawk river neither in 1826 nor in 1884 was navigable as a matter of fact east of Schenectady. When the Cohoes Company built its dam above the falls the character of the river at such site and for several miles above was that of rifts, rapids and shallows. The effect of building a dam in such place was to convert the river from a useless waste into a utility to serve a private and public purpose. The grants were of lands in the river bed of sufficient area to place suitable dams upon and to pond the waters and use them for manufacturing purposes and return them to the river. The claim is made by the respondent that the Legislature was without power to grant away any part of the *jus publicum*. The true line of distinction between the cases which hold that a State may or may not convey away its *jus publicum* lies in the test as to whether such grant constitutes a reasonable exercise of the State's sovereign power. (*Langdon* v. *Mayor, etc., of City of N. Y.*, 93 N. Y. 129.) On this subject in a recent case the United States Supreme Court has said, quoting Mr. Justice FIELD in *Illinois Central Railroad* v. *Illinois* (146 U. S. 387), relating to a grant of more than 1,000 acres in front of the city of Chicago: " It is grants of parcels of lands under navigable waters that may afford foundation for wharves, piers, docks and other structures in aid of commerce, and grants of parcels which, being occupied, do not substantially impair the public interest in the lands and waters remaining, that are chiefly considered and sustained in the adjudged cases as a valid exercise of legislative power consistently with the trust to the public upon which such lands are held by the State. But that is a very different doctrine from the one which would sanction the abdication of the general control of the State over lands under the navigable waters of an entire harbor or bay, or of a sea or lake. Such abdication is not consistent with the exercise of that trust which requires the government of the State to preserve such waters for the use of the public. The trust devolving upon the State for the public, and which can only be discharged by the management and control of property in which the public has an interest, can not be relinquished by a transfer of the property. The control of the State for the purposes of the trust can never be lost, except as to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the public interest in the lands and waters remaining. It is only by observing the distinction between a grant of such parcels for the improvement of the public interest, or which when occupied do not substantially impair the public interest in the lands and waters remaining, and a grant of the whole property in which the public is interested, that the language of the adjudged

cases can be reconciled." (*Appleby* v. *City of New York*, 271 U. S. 364, 394.)

In the grants in question there was no impairment of the public interest, the rifts and shallows were submerged and navigation aided.

Chief Justice TAFT points out the exceptions that have been recognized in this State and reviews such cases to conclude that " the State and the city had parted with the *jus publicum* and the *jus privatum;* and that the city can only be revested with them by a condemnation of the rights granted." (*Appleby* v. *City of New York, supra,* 399.)

The right to build the dams and occupy the bed of the river and pond the waters and distribute them by canals constituted special franchises — vested interests and property — and of such property the owner cannot be divested without compensation. (*First Construction Co.* v. *State of New York,* 221 N. Y. 295; *Waterford El. L., H. & P. Co.* v. *State of New York,* 208 App. Div. 273; affd., 239 N. Y. 629; *Langdon* v. *Mayor, etc., of City of N. Y.,* 93 id. 129.)

The claimant's Cohoes dam property was injured and its franchise to build a dam above the canal aqueduct taken by the State in the building of the Crescent dam and canalizing the Mohawk river above it, and the State contends that it cannot be made to pay for such injuries.

The claims are, *first,* that it had no right to raise its dam from a crest of 154.2 to 157; and *second,* that it waived its claim for any damages to such dam and the pond created thereby.

I am unable to discover that the claimant possessed any right to raise its dam from 154.2 to 157. It certainly had no prescriptive right, for it did not erect a permanent structure at an elevation of 157 until the year 1914. It had no grant from the State to build a dam at such particular elevation.

It is true that the grant from the State did not specify the elevation at which it should build its dam but in accepting the right and franchise to build a dam the Cohoes Company built it at 154.2. That dam was 10 feet high above the river bed. The height of it was determined by the predecessor of the claimant. The dam met the needs at the time of the granting and its construction represented the completed act of the parties. (Farnham Waters & Water Rights, 2258; *Dexter* v. *Jefferson Paper Co.,* 22 Misc. 389; *Strong* v. *Benedict,* 5 Conn. 210.)

This constitutes an application of the rule relating to the construction of contracts indefinite in terms that if one would know what the parties intended he may look at acts done under it.

(*People* v. *O'Brien*, 111 N. Y. 1.)   As to the claim of waiver of injury to pondage rights behind the dam at 154.2.   The claim is not limited to damages to pondage rights behind a crest of 157. It comprehends all damages to the claimant consequent upon the building of the Crescent dam.

The contention of the respondent that claimant has waived its claim for damages to its Cohoes dam and pond rests upon the proposition that the State would accede to the claimant's claim, that it had a right to maintain the dam at a crest of 157.   This is what the claimant says: " Claimant in abandoning its claim for compensation for the destruction of pondage created by its present dam, and by asking the Court to hold that the dam at its present crest elevation is a lawful structure, proceeds upon the theory that the right of claimant to erect and maintain a dam at 157 feet crest elevation at this site, is superior to the rights of the State, except only the State's right to construct and maintain the barge canal as constructed and now maintained.   Or to put it another way, the rights of the Cohoes Company and of claimant under the act of 1826, were and are, subject to the right and power of the State to do what it has done in the building of the barge canal; but claimant may maintain under the act of 1826, and under its rights as a riparian owner, its present dam with a crest elevation of 157 feet, since that dam at such crest elevation does not impair or interfere with the full enjoyment by the State of the navigation project which it has created."

The State has not acceded to this contention — this understanding of the appellant.   The concession claimed in the stipulation is a conditional one and the State has not accepted the condition. (*McLellan* v. *Goodwin*, 43 App. Div. 148, 153; *Hallow* v. *Hallow*, 200 id. 645; *Humphries* v. *Shapiro*, 187 id. 96; *People ex rel. Tappin* v. *Cropsey*, 176 id. 415; *Magnolia Metal Co.* v. *Pound*, 60 id. 318.)

The separation of the claimant from its special franchise involves title to the bed of the river and must be effected by some formal deed or grant.

I am not satisfied that an attorney has the right to give his client's property away under a mistaken idea of his client's right. The assumption that the State could take his client's special franchise property away without compensation was erroneous as was the claim that the claimant possessed the right to flow the water two feet eight inches against the Crescent dam.   As hereinbefore pointed out the claimant has no such right.

The facts that in its amended order claiming a specific amount of damages for the destruction of part of its flowage rights at the Cohoes dam the amount is not stated and that its requests to find

do not contemplate damages to its Cohoes dam and pond are scarcely of moment.

For the State to take without compensation so great an amount of property as is represented by the diminution of the flowage behind the dam with a crest of 154.2 is to unjustly enrich itself on the failure of a claimant to have his property rights presented to the court. If the owner claimed pay for 100 acres when 1,000 acres were taken by the State and that fact became apparent to the court, would it discharge its duty in making an award for the 100 acres?

The function of courts is to do justice. They are responsible for the grist of the mill and must construe pleadings and claims of counsel with liberality to secure the rights of claimants and not to deny them. (*Morris Plan Co.* v. *Globe Indemnity Co.,* 253 N. Y. 496.)

The claimant has also a claim for damages for the destruction of the right and special franchise to build a dam with a crest at 168 above the canal aqueduct. The State contends that such right and franchise was repealed by chapter 147 of the Laws of 1903, the Barge Canal Act.

The Barge Canal Act made no mention of the acts of 1826 or 1884 and in no manner directly referred to them nor to the rights and special franchises of the Cohoes Company. The destruction and injury to said special franchises was not accomplished by legislation. The location of the Crescent dam was the act of the State Engineer. (Laws of 1903, chap. 147, §§ 3, 4.) Instead of taking " lands, structures and waters " without compensation, in the act compensation is specially provided for. (§ 4, *supra.*)

Besides the State to succeed in its contention must overthrow the sound doctrine applicable to repeals that the law does not favor repeals by implication. There was no repugnance between the acts growing out of the location of the Crescent dam by the State Engineer and the acts of the Legislature of 1826 and 1884. The dam might well have been located at another place. (Sutherland Stat. Const. § 138.) If we assume that the language of chapter 147, *supra,* effects a repeal of the grant of a special franchise then the State is confronted with the rule clearly stated by Chief Judge RUGER in *People* v. *O'Brien (supra,* 37): " We think that there are no reported cases in which the judgment of the court has ever taken the franchises or property of a corporation from its stockholders and creditors through the exercise of the reserved power of amendment and repeal, or transferred it to other persons or corporations, without provision made for compensation." Upon this proposition all of the five judges sitting agreed. (See concur-

ring memorandum of ANDREWS and EARL, JJ., ¶ 2.) The argument of the chief judge, well fortified by numerous authorities, requires no new statement here.

The argument of the respondent that it has the power to take claimant's property without compensation is claimed to be supported by several authorities. Let us examine them.

*Lewis Blue Point Oyster C. Co.* v. *Briggs* (198 N. Y. 287, 295). That case involved the right of the government to improve navigation where there was an oyster bed within the *jus publicum* to which the *jus privatum* is subject. Judge VANN wrote that *Monongahela Navigation Co.* v. *United States* (148 U. S. 312) "is not analogous" to the oyster bed case. Neither is it analogous here for the claimant has accepted the property of the State and made improvements on the strength of it.

*Sage* v. *Mayor* (154 N. Y. 61) states a case between riparian proprietors and New York city involving the right of the city to improve the water front.

*Lansing* v. *Smith* (8 Cow. 146) involves no taking. The principle is the same as that enunciated by this court in *Matter of Board of Supervisors of Ulster County* (215 App. Div. 147).

*Union Bridge Co.* v. *United States* (204 U. S. 364) involves a controversy between the Federal government and a bridge company. It had no grant from the general government and the grant from the State provided that its erection should not obstruct the navigation of the Allegheny river.

*Shively* v. *Bowlby* (152 U. S. 1) deals with littoral or riparian titles to land which are subject to the rights granted by the Constitution of the United States and holds that a donation land claim passes no title to lands below high-water mark as against a subsequent grant by the State.

Judge VANN, in *Lord* v. *Equitable Life Assurance Society* (194 N. Y. 227), points out the difference between the right to be a corporation and the right to own property. The charter to be a corporation may be taken away, altered or repealed, but property cannot be thus taken without compensation. (*Appleby* v. *City of New York, supra; New York Central & H. R. R. R. Co.* v. *Williams,* 199 N. Y. 108; *First Construction Co.* v. *State of New York,* 221 id. 295; *Waterford El. L., H. & P. Co.* v. *State of New York,* 208 App. Div. 273; affd., 239 N. Y. 629.) (See cases cited under Const. art. 8, § 1, McKinney's Laws and Constitution.)

Now let us consider the provision of section 4 of chapter 90 of the Laws of 1826. It reads: "Provided always, that nothing in this act contained shall be so construed as to * * * impair or injure the rights and privileges of the people of this State

If the effect of this language be to permit the State to take back what it had already granted then the provision is repugnant to the grant. (Sutherland Stat. Const. § 221; 1 Kent Comm. 463.) Of such a reservation Chief Judge RUGER wrote: "An express reservation by the Legislature of power to take away or destroy property lawfully acquired or created would necessarily violate the fundamental law, and it is equally clear that any legislation which authorizes such a result to be accomplished indirectly would be equally ineffectual and void." (*People* v. *O'Brien, supra,* 51.)

Moreover the act itself provides that it must be construed benignly and favorably for every beneficial purpose. A construction which takes property from the company incorporated by the act without compensation cannot be described as "benign." A benign construction would be one which protected the property of the corporation accepted and used on the strength of the grant.

The next contention of the State is that the claimant's predecessor has forfeited by nonuser its special franchise to build a dam at the old canal aqueduct. I do not think that point needs any discussion. It is clear that the power to declare a forfeiture does not lie in the Court of Claims. (*Thompson* v. *N. Y. & Harlem R. R. Co.,* 3 Sandf. Ch. 625, 652; *Matter of New York Elevated R. R. Co.,* 70 N. Y. 338; *Matter of Brooklyn E. R. R. Co.,* 125 id. 440; *Parker* v. *Elmira, C. & N. R. R. Co.,* 165 id. 274; *People* v. *Broadway R. R. Co.,* 126 id. 29; *First Construction Co.* v. *State of New York,* 221 id. 321; *New York Electric Lines Co.* v. *Empire City Subway Co.,* 235 U. S. 179.)

Neither is the contention that the claimant has abandoned its said special franchise sound. The Court of Claims refused to find abandonment as a fact upon the request of the respondent. The court had before it conclusive evidence that the Cohoes Company needed extra waters and power in its business. It was provident in insuring the right to increase its power capacity in the future as it needed it. That it refrained from expending the money necessary to use such special franchise, the destruction of which continued to be threatened by the State from the early nineties, should be held to work for the credit and good faith of the claimant and not as a basis for the destruction of its property.

According to the State's contention there was an abandonment by the claimant of its special franchise granted by the act of 1884. There could be no abandonment, for in the State's contention there was no admission that such franchise to build a dam there was granted nor that it was accepted nor that anything was done under it. That which the claimant never had it could not abandon. But whether the argument of the State be for forfeiture or abandon-

ment it is based upon the same reasons. Abandonment constitutes but a reason for forfeiture. (*First Construction Co.* v. *State of New York, supra; People* v. *Albany & Vermont R. R. Co.,* 24 N. Y. 261.) A situation then exists that if claimant had a special franchise at the time it filed its claim it was still in the ownership of it.

The only effect of the claims of forfeiture and abandonment are as trenchantly said by Chief Judge HISCOCK that such claim might " be an element to be considered in fixing its market value in these proceedings." (*First Construction Co.* v. *State of New York, supra,* 321.)

The *Waterford Case (supra),* it seems to me, controls our decision in the case at bar. The facts are quite similar. Since that case has been affirmed by the Court of Appeals we should yield to its authority.

The judgment of the Court of Claims should be reversed and matter remitted to make findings of damages for injury to claimant's pond behind dam with crest of 154.2 and for destruction of special franchise to build above the Crescent canal aqueduct a dam with crest at 168.

Judgment affirmed, with costs.